PEOPLE *v.* FRIES.

1. CRIMINAL LAW—PLEA OF GUILTY—SENTENCE—COUNSEL FOR AC-CUSED.

Acceptance of plea of guilty and passing sentence for carrying concealed weapons without a license without having appointed

counsel for defendant *held,* not error under record showing that he had waived examination before the magistrate, voluntarily pleaded guilty, did not indicate a desire to have counsel, and no unusual circumstances disclosed duty of court to appoint counsel.

2. Same—Insanity Subsequent to Receiving Sentence.

Fact that subsequent to receiving sentence for crime of carrying a concealed weapon without a license to do so defendant may have become deaf and insane is insufficient to set aside conviction where at time plea of guilty was voluntarily entered and sentence passed record shows he was possessed of sufficient mentality to understand he had committed a crime, was being charged with it, and pleaded guilty thereto.

Appeal from Ingham; Hayden (Charles H.), J. Submitted June 25, 1940. (Calendar No. 40,886.) Decided September 6, 1940.

William J. Fries was convicted of carrying a concealed weapon without a license. Affirmed.

*Allan Sloan* and *Humphreys Springstun,* for defendant.

*Thomas Read,* Attorney General, and *Richard B. Foster,* Prosecuting Attorney, for the people.

North, J. This appeal, leave having been granted, is from the order of the Ingham circuit judge denying defendant's motion for a new trial. October 17, 1938, defendant on his plea of guilty was convicted of carrying concealed weapons without having a license so to do. He was then, remanded to the county jail to await sentence which was imposed November 4, 1938, the penalty being 2½ to 5 years in the State prison of southern Michigan. Motion for leave to file a motion for a new trial was made February 28, 1939. Later leave was granted, and the motion for a new trial was made and heard. It was denied August 9, 1939. This appeal followed.

The two reasons urged in support of the motion for a new trial were (1) that defendant was not represented by counsel at the time he pleaded guilty and was sentenced, and (2) that he did not have mental capacity to comprehend or be capable of committing the crime with which he was charged or to understand that he was pleading guilty to the charge made against him. In short it was urged in support of the motion that defendant was insane at the time of the alleged commission of the crime, and that under the circumstances above noted he was deprived of his constitutional rights to a fair trial. It was also asserted in support of the motion that because defendant had "impaired hearing and was unable to hear or understand the court proceedings" his sentence and plea of guilty should be set aside.

Our review of this record fails to disclose any valid reason for reversing the circuit judge's order denying a new trial. It appears that defendant waived examination before the magistrate, and when subsequently arraigned in circuit court he voluntarily and knowingly entered his plea of guilty. He neither intimated a desire for aid of counsel nor were any unusual circumstances disclosed which indicated a duty on the part of the court to appoint counsel for defendant. Under such circumstances accepting defendant's plea of guilty and passing sentence without appointing counsel for him was not error. See *People* v. *Williams,* 225 Mich. 133.

In concluding that at the time defendant was before the circuit court his mentality was not impaired to the extent that he did not know right from wrong in relation to the offense charged or that he did not understand the nature of the offense to which he pleaded guilty, we are mindful of the showing that shortly thereafter he was thought by

those who had him in custody to be somewhat abnormal mentally. But his condition when arraigned in the circuit court and when sentenced is set forth in the statement of the circuit judge embodied in the record at the time the motion for a new trial was denied. We quote:

"His arraignment was in open court, in the presence of the court officer, the clerk of the court, spectators and assistant prosecuting attorney, Leonard Crandall, who read the information and explained the same to the respondent, to which he readily pleaded guilty. He was then questioned in private and at length by the court concerning his history and the circumstances of the offense with which he was charged. He was also questioned by the court on two other occasions for sentence and at no time did he evidence any difficulty in hearing or understanding of the same. * * * While at Mason at the county jail he was interviewed by the probation officer, in obtaining the facts for his report on the case, as required by statute. On the different occasions that I talked with the respondent he told me a number of different stories as to how he came into possession of the revolver and the purpose for which he had it or what he was going to do with it and at no time, from the time of his arraignment to his sentence, was there anything done or said by him which impressed me that he had any difficulty with his hearing or that he was out of the ordinary mentally in any respect, and certainly there was no evidence of his being mentally incompetent. * * *

"After a careful consideration of this entire matter, I am not able to bring myself to the conclusion that the respondent was, at the time of his arrest, other than of normal mentality regardless of the fact he has since been confined in the Ionia Hospital. I am still of the opinion that he was mentally competent at all times leading up to and including

the time of his confinement in the State prison at Jackson.''

While the psychopathic report made sometime after defendant was committed to the State prison shows defective mentality, it is far from being sufficient to show that defendant was insane or an imbecile at or before the time sentence was imposed. In part the psychiatrist's report states:

"On 12-6-38, the inmate was referred for mental examination. * * * At that time, we did. not find any evidences of paranoid ideas, delusions, or auditory and visual hallucinations. However, we did observe that the inmate was secretive, uncooperative, refused to answer questions directly, was evasive, and claimed he did not know what his offense was or his sentence. * * * He appeared before the classification committee first on 12-9-38, at which time the committee felt there was some question regarding his mental condition, and he was referred for further classification proceedings at the next meeting. He again appeared before the committee on 12-13-38, and at that time it was felt that he did have a mental condition.''

Some months later defendant was transferred to the Ionia State hospital for criminal insane, and presumably he is now an insane person. But notwithstanding his subsequent condition as disclosed on this motion, it is not established that at the time defendant was before the circuit court he "was not possessed of the mental faculties as to understand that he had committed a crime, or that he was being charged with a crime, or that he was pleading guilty to a crime.''

The claim that defendant's hearing was so defective that he could not comprehend the proceedings had in the circuit court is not sustained by the record. This claim is wholly inconsistent with and quite conclusively disproved by the observation of

the circuit judge above noted, and also by the report of the psychiatrist who said he had "talked to him many times and he seems to be able to hear perfectly well when spoken to in a normal tone of voice."

The order of the circuit judge denying defendant's motion for a new trial is affirmed.

BUSHNELL, C. J., and SHARPE, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.