## PEOPLE *v.* QUICKSALL.

1. CRIMINAL LAW—PRELIMINARY EXAMINATION—ARRAIGNMENT.
   After entry of plea of guilty voluntarily and knowingly made, any irregularity incident to proceedings before examining magistrate was waived (3 Comp. Laws 1929, § 17256).

2. HOMICIDE—SUFFICIENCY OF INFORMATION.
   It is not necessary to set forth in an information for murder the manner in which nor the means by which the death of deceased was caused, it being sufficient to charge defendant did murder the deceased (3 Comp. Laws 1929, § 17285).

3. CRIMINAL LAW—ASSISTANCE OF COUNSEL.
   Claim made on motion for leave to file a delayed motion for new trial, some 10 years following plea of guilty and sentence for murder, that defendant was denied the right to the assistance of counsel *held*, unsupported by record, where it appears that he was a man of fairly keen intellect and 44 years of age when he pleaded guilty and had not requested counsel although he had previously been involved in criminal or divorce proceedings at least four times.

4. SAME—PLEA OF GUILTY—FEAR—MISREPRESENTATION—DELAYED MOTION FOR NEW TRIAL.
   Plea of guilty to charge of murder made by man with a fairly keen intellect when he was 44 years of age *held*, under record on appeal from denial of leave to file delayed motion for new trial, some 10 years later, not to have been made through effect of fear and of misrepresentation by sheriff and prosecuting attorney who participated in the prosecution.

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am. Jur., Criminal Law, § 256.
[1, 3, 6, 9] Accused's constitutional right to assistance of counsel. 84 L. Ed. 383.
[2] 26 Am. Jur., Homicide, § 263.
[3] 14 Am. Jur., Criminal Law, § 174.
[4] 14 Am. Jur., Criminal Law, § 270.
[6] 14 Am. Jur., Criminal Law, § 174.

5. Constitutional Law—Equal Protection.

Whether one convicted of crime has been denied his constitutional right to equal protection of laws depends upon the factual background of the particular case (U. S. Const. Ams. 5, 6, 14; Mich. Const. 1908, art. 2, § 19).

6. Same—Equal Protection—Assistance of Counsel.

It is not commanded by the Fourteenth Amendment to the Constitution of the United States that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel.

7. Criminal Law—Plea of Guilty—Assistance of Counsel.

Acceptance of plea of guilty and passing sentence for murder without having appointed counsel for defendant *held*, not error under record showing he had waived examination before the magistrate, voluntarily pleaded guilty, did not indicate a desire to have counsel and no unusual circumstances disclosed duty of court to appoint counsel.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 17, 1948. (Docket No. 74, Calendar No. 43,970.) Decided October 4, 1948. Application for certiorari granted by Supreme Court of the United States February 28, 1949.

Charles Quicksall was convicted of murder. Motion for leave to file motion for new trial denied. Affirmed.

*Charles Quicksall, in pro. per.*

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Robert J. Barber,* Prosecuting Attorney, and *William E. Sykes,* Assistant Prosecuting Attorney, for the people.

North, J. On the 2d day of July, 1937, Charles Quicksall, defendant herein, shot and killed Mrs. Grace Parker. He was arrested on the same day, and owing to a self-inflicted wound, he was taken to a hospital where he was kept under guard. The death of Mrs. Parker was evidently the culmination

of a suicide pact entered into by defendant and the deceased in which it was agreed that in event of detection of their unduly intimate relations they "would die together." On July 15, 1937, defendant having recovered, was arraigned on a complaint and warrant charging him with murder. He waived examination and was held for trial in the circuit court. On the following day an information charging defendant with murder was filed, he was arraigned, and pleaded guilty. Thereupon the circuit judge painstakingly and in much detail investigated the attendant circumstances, both by interviewing defendant privately in the judge's chambers and by examination of defendant in open court, where a record of the proceedings was made. At the same time four witnesses, who had knowledge of facts relevant to the offense charged, were examined in open court in defendant's presence. Thereupon defendant's plea of guilty was accepted and determination made by the court that the offense committed by defendant was murder in the first degree, and a sentence of life imprisonment was imposed.

Approximately 10 years later (April 18, 1947) defendant filed a motion for leave to file a delayed motion to vacate the sentence and set aside his plea and for a new trial. This motion was opposed by the prosecuting attorney. A hearing was had at which defendant was personally present. His application and the showing in support thereof were carefully considered, he was examined, not under oath, in court. Witnesses were examined as to matters upon which defendant relied and the trial court again with extreme patience and care investigated and considered defendant's claims, and after due consideration defendant's motion was denied. At the above hearing defendant was asked if he desired counsel should be provided for him, but he declined to have counsel, saying "I figure that I would be

just as well qualified to present it myself." Leave having been granted, defendant has appealed.

At the outset defendant complains of an alleged irregularity in his arraignment, in that he now says the prosecuting attorney waived the examination for defendant. The record shows that the complaint was read to defendant; that his rights were "explained to him" by the magistrate and that defendant "expressly waived examination." However, if, as we hereinafter hold, defendant's plea of guilty was voluntarily and knowingly entered, any irregularity incident to his arraignment before the examining magistrate* was waived, and therefore need not be given further consideration. *People* v. *Tate*, 315 Mich. 76.

Next, defendant asserts that the information filed against him was fatally defective in that it did not specify in what manner or with what instrument the alleged crime was committed. Under Michigan law there is no merit to this contention. The information complies with the statutory requirements of this State, which are:

"In all indictments for murder and manslaughter it shall not be necessary to set forth the manner in which nor the means by which the death of the deceased was caused; but it shall be sufficient in any indictment for murder to charge that the defendant did murder the deceased." 3 Comp. Laws 1929, § 17285 (Stat. Ann. § 28.1011). See, also, *People* v. *Bemis,* 51 Mich. 422; *People* v. *Roberts,* 211 Mich. 187 (13 A. L. R. 1253).

Defendant's next contention, as set forth in his brief, is as follows:

"Defendant contends he was denied the right to the assistance of counsel. And his plea was entered

---

* See 3 Comp. Laws 1929, § 17256 (Stat. Ann. § 28.982).— Reporter.

because of misunderstanding, through the effect of fear and of misrepresentation."

As to the first of the above contentions, the record discloses its inaccuracy. The record refutes defendant's claim that "he was denied the right to the assistance of counsel." While it is true defendant at the 1937 hearing in court was not represented by counsel, there is no showing that he at any time intimated to the court a desire for counsel. We shall note some of the facts which in the instant case present a materially different factual background from that found in numerous cases upon which defendant seeks to rely in asserting reversible error because at the time of his conviction he did not have counsel. At the time defendant was before the court charged with this murder, he by no means was a man lacking in ordinary intelligence, he was not youthful, neither was he one who was inexperienced in court proceedings. Instead, at the time he pleaded guilty he was 44 years of age. The record made at that time and particularly his attitude and conduct in court in this later hearing disclosed that he was a man of fairly keen intellect and not one who by reason of youth or adverse circumstances should have his rights carefully protected by the appointment of counsel, which, as above noted, was not requested. He had been twice married and twice divorced. In addition to the above court experience he had been twice convicted of a felony and served penitentiary terms—16 months in Ohio and a later term in Michigan for breaking and entering. At the present hearing defendant at no time asserted that when he pleaded guilty he was not aware of his right to be represented by counsel, and, if circumstances justified, appointment of such counsel for him by the court. In view of defendant's intelligence, his age, and his earlier experiences in court,

there would seem to be no room for doubting that defendant at the time he pleaded guilty knew of his right to counsel if requested. Even at the hearing of the present matter he made no such request, but instead he chose to proceed without the appointment of counsel. Under the circumstances disclosed the rights of defendant were not infringed by reason of counsel not having been appointed for him at the time he pleaded guilty.

Careful consideration was given by the trial court and has also been given by this Court to defendant's contention that he entered a plea of guilty "because of misunderstanding, through the effect of fear and of misrepresentation." The conclusion is quite irresistible that defendant did not plead guilty through a misunderstanding as to his being then charged with *murder*, which is the claim he now makes. Among other things disclosed by the record is the following. Before his arraignment and while he was at the hospital defendant said to an attendant: "It will mean life for me anyway." On defendant's arraignment before the magistrate there was read to him a complaint which in plain words charged that he "feloniously, wilfully and of his malice aforethought, did kill and *murder* one Grace Parker." The information read to him at the time he pleaded guilty recited substantially the same words. When questioning defendant, not under oath, in the present matter the circuit judge asked defendant the following:

"*Q.* You remember then that the court asked you —said to you (at the time defendant pleaded guilty): 'You are convicted by your plea of guilty of *murder* by the determination of the court of *murder in the first degree;* have you anything to say before sentence? Respondent: No, sir.' You remember that?
"*A.* I do."

So far as disclosed, defendant has never denied and does not now deny that he shot and killed Mrs. Grace Parker. Under this record it would be an insult to one's intelligence to sustain defendant's claim that he did not understand he was charged with murder.

Insofar as defendant now claims he pleaded guilty "through the effect of fear and of misrepresentation," the alleged pertinent facts are as follows: Defendant, after all these years, now asserts that while he was in the hospital either the prosecuting attorney or the sheriff, or both, stated to defendant that if he would plead guilty he would be given a sentence of not more than 2 to 15 years, supposedly for the offense of manslaughter. He also claims that he was led to believe by his custodians that they were protecting him from harm in that the husband of the murdered woman was threatening to throw acid in his face, and further that when he was confined to the hospital bed his request that someone make a long distance telephone call to his relatives in Ohio requesting that they aid defendant in procuring counsel, was not granted. It is worthy of note that notwithstanding at the time he entered a plea of guilty defendant had ample opportunity, both in open court and in private consultation with the circuit judge, to advise the circuit judge of any or all of the above circumstances, defendant does not now assert that he made any claim of that character before the circuit judge. Of course, at that time the prosecuting attorney was present, and the sheriff in all probability was available. But now after all these years of delay and defendant for the first time is making these claims, it is disclosed by the record that the prosecuting attorney because of a stroke of paralysis is bedridden, is entirely incapacitated, and in consequence is unable to testify. At the hearing of the present matter and in defendant's pres-

ence the sheriff, who had custody of defendant after his arrest and until his plea of guilty was entered, testified and definitely denied defendant's claim that while he was in custody the sheriff or anyone in the sheriff's presence denied defendant the right to get in touch with friends or relatives incident to procuring a lawyer or to use the telephone for that purpose. The sheriff also testified that defendant was not denied the right to consult with a lawyer, and, also, testified that in talking to the sheriff or the prosecutor the defendant had not denied his guilt of the crime charged. Further, so far as the sheriff could recall, the defendant did not at any time ask the sheriff to get a lawyer or to get in touch with a lawyer for defendant; and the sheriff definitely denied that either he or the prosecuting attorney, so far as the sheriff was aware, had told defendant he could not have the assistance of counsel or visitors until he had been in court; and that the sheriff did not advise defendant that he had better plead guilty to manslaughter, and the sheriff never had any knowledge of the prosecutor saying to defendant if he would so plead the prosecutor would see that defendant would receive a sentence of from 2 to 15 years. The circuit judge who heard this motion, being the same judge who accepted defendant's plea of guilty, evidently gave no credence to defendant's assertions in the respect under consideration, nor do we. In any event since defendant did not at the time report these matters to the trial judge he should not be heard at this late date to assert them to the same judge in the hope of invalidating the sentence imposed.

The remaining portion of defendant's brief is devoted to his claim that: "Appellant (was) denied his constitutional rights to the equal protection of laws * * * which is guaranteed by both the State (Constitution 1908, art. 2, § 19) and Federal Consti-

tutions, through the Fifth, Sixth and Fourteenth amendment." In determining whether one convicted of crime has been denied his constitutional rights in the manner above indicated, it is necessary in each instance to give careful consideration to the factual background of the particular case. See *Wade v. Mayo, State Prison Custodian,* 334 U. S. 672, 684 (68 Sup. Ct. 1270, 92 L. Ed. 1647) (decided June 14, 1948), wherein relative to an alleged violation of one's constitutional rights, it is said:

"There are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual."

And in *Betts* v. *Brady, Warden,* 316 U. S. 455, 473 (62 Sup. Ct. 1252, 86 L. Ed. 1595), in the prevailing opinion it is said:

"As we have said, the Fourteenth Amendment prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right, and while want of counsel in a particular case may result in a conviction lacking such fundamental fairness, we cannot say that the amendment embodies an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel. The judgment is affirmed."

We have already outlined quite in detail the factual background of the instant case; and under the circumstances disclosed by this record we are convinced that defendant was not deprived of any of his constitutional rights. We have given careful consideration to the numerous cases cited by defendant in support of his contention; but, without

herein reviewing them in detail, we deem it sufficient to note as to each of such cases that we find them clearly distinguishable from the instant case on the basis of the factual background. For example, defendant cited *DeMeerleer* v. *Michigan,* 329 U. S. 663 (67 Sup. Ct. 596, 91 L. Ed. 584). The defendant in that case was an inexperienced youth of the age of only 17 years, who was arrested, convicted by a plea of guilty of murder in the first degree after he had sought to plead guilty to murder in the second degree, and was sentenced, all on the same day.

Another case cited and relied upon by defendant is *Powell* v. *Alabama,* 287 U. S. 45 (53 Sup. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527), but here again the factual situation in consequence of which it was held that there had been an invasion of defendants' constitutional rights is not at all comparable to the background of the instant case. In the *Powell Case,* where it was held the defendants had not been given a fair trial, on page 57 of its opinion, the court said:

"The defendants, young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers, charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them."

Our conclusion is that the instant case is in the field of law and governed by our decisions in such cases as *People* v. *Fries,* 294 Mich. 382, and *In re Elliott,* 315 Mich. 662.

In the *Fries Case* a headnote reads:

"Acceptance of plea of guilty and passing sentence for carrying concealed weapons without a license

without having appointed counsel for defendant *held,* not error under record showing that he had waived examination before the magistrate, voluntarily pleaded guilty, did not indicate a desire to have counsel, and no unusual circumstances disclosed duty of court to appoint counsel."

In the *Elliott Case,* in which the United States supreme court denied certiorari, the gist of the decision is indicated by the following headnote:

"Release of prisoner on writ of habeas corpus for which petition was filed more than 15 years after he had pleaded guilty *held,* not justified because of alleged denial of right to be represented by counsel, under record showing that petitioner had been duly arraigned in circuit court on charge of robbery armed, made no request for counsel, entered a voluntary plea of guilty which was freely and understandingly made, that sentence was later imposed, and that petitioner did not at any time make any request to be allowed counsel or to change his plea."

After a careful consideration of the various contentions made by defendant, we are brought to the conclusion that there is no merit to his motion for leave to make a delayed motion for a new trial. The holding of the circuit court to that effect is affirmed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.