PEOPLE *v.* MOORE.

HOMICIDE—DUE PROCESS—ADVICE OF COUNSEL—PLEA OF GUILTY.

> Defendant *held,* not to have been denied due process of law in prosecution for murder, where it appears that he was apprehended later in the same afternoon the murder was committed, questioned by officers, 4 days later pleaded guilty without advice of counsel, and, although then only 17 years of age, he had been in trouble 4 or 5 times before committing the murder, for breaking and entering and stealing automobiles and had been committed to the State boys' vocational school and the trial court advised him of his constitutional right to jury trial before accepting the plea of guilty; hence, denial of motion for new trial, filed some 12 years later was proper.

CARR, C. J., and SMITH and SHARPE, JJ., dissenting.

Appeal from Kalamazoo; Sweet (Lucien F.) and Weimer (George V.), JJ. Submitted June 16, 1955. (Docket No. 67, Calendar No. 46,250.) Decided December 1, 1955. Rehearing denied March 1, 1956. Certiorari granted by Supreme Court of the United States November 13, 1956.

Willie B. Moore filed his motion for new trial 12 years after his plea of guilty to murder. Motion denied. Defendant appeals. Affirmed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Jacob A. Dalm, Jr.,* Prosecuting Attorney, and *J. Douglas Cook,* Assistant Prosecuting Attorney, for plaintiff.

*William H. Culver,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES

14 Am Jur, Criminal Law §§ 167, 269 *et seq.*; 26 Am Jur, Homicide §§ 97, 98.

Sharpe, J. (*dissenting*). Defendant, Willie B. Moore, upon his plea of guilty to an information charging the crime of murder, was sentenced to life imprisonment. The record shows that on the afternoon of October 26, 1938, Josie Zeedyke was murdered in Kalamazoo, Michigan. Defendant was arrested in the late afternoon of the same day. He was questioned by numerous public officials on the night of his arrest until approximately 2 or 3 o'clock in the morning of the following day. On October 27, 1938, he was questioned from approximately 8 o'clock a.m. until 10 or 11 o'clock p.m. On October 28, 1938, he was again subject to questioning from approximately 8 o'clock a. m. until about noon, and again questioned in the afternoon when he confessed to the crime charged. He was then taken before the municipal justice court where he waived examination and was bound over to the circuit court for trial. On October 29, 1938, defendant was arraigned, pleaded guilty, and was sentenced to Southern Michigan Prison at Jackson for life.

No record was made of the proceedings in the circuit court at the time of the arraignment and plea, but evidence was taken to determine the degree of murder. During the day of arraignment the circuit judge directed that defendant be taken to the judge's private chambers, and upon their return to the court room the judge stated:

"In a private interview with him (the respondent) in my chambers he discussed the whole affair very freely with me in all its revolting details. The examination required by statute has been had; several witnesses examined. The court has found and determined that respondent is guilty of murder in the first degree.

"In my private interview with respondent I assured him that he must not plead guilty unless he really is guilty; that he was not required to plead

guilty; that he could have a trial by jury if he desired it. He assured me freely and voluntarily that he is guilty and that his one desire is to have it all over, to get to the institution to which he is to be committed, and to be under observation and to be examined."

On May 26, 1950, defendant filed a motion for a new trial for the following reasons:

"1. Because the verdict is contrary to the law, whereas said respondent was deprived of rights essential to a fair trial.

"2. Because at no time was assistance of counsel offered or mentioned to respondent.

"3. Because said respondent was not informed of the consequence of his plea of guilty.

"4. Because said respondent was *hurried* through unfamiliar legal proceedings with not a word being said in his defense or cross-examination of the State's witnesses.

"5. Because said respondent, being of the age of 17 years at the time of said trial and possessed of only a seventh grade education, was not otherwise aware of his constitutional rights."

A hearing was held on the above motion, testimony taken tending to show high tension in the city, threats of plots to do defendant bodily harm, and that he was taken over a back road to prison.

Charles Struble, who was sheriff of Kalamazoo county in 1938, testified:

"In talking with Willie Moore—that was before he had made any statement—I told him that if he was guilty of it he might better own up on it because I says there could be trouble. Tension is very high outside and there could be trouble. If you are not guilty of it, why then, I says, I would stand pat forever after. Then I told—I spoke to him about what would be required of him and I would have to

take him to the municipal court for his arraignment in the lower court and then back over there, and I told him he would be entitled to a hearing in lower court and I says, 'There you will have the judge read to you and you can waive or demand an examination. You are entitled to an examination over there. It is my duty, and it is up to me, to protect you, to use every effort at my command to protect you, but, I says, 'the tension is high out there and I am just telling you what could happen if it was started by someone.' I don't know the language I used. * * *

"I don't know as I come out and said at any time for him to plead one way or the other, but what I was putting over to him was the fact that if you are guilty and will be sent away you might better be getting away before trouble, because I had had information there was certain colored fellows, a group of them, that was going to interfere with me, and also that there was a bunch of Holland fellows going to meet me when I go to Jackson, they would meet me there at Galesburg there, and, therefore, when he was sentenced I avoided the main route and went way through by Gull Lake and across over in the hills there."

The record also shows that defendant is a colored man. He was 17 years of age at the time of his sentence, had a seventh grade education, and was without assistance of counsel at the time he pleaded guilty. Prior to this time he pleaded guilty to the theft of an automobile. It is also a fact that the trial judge is deceased and that no official records were kept of the arraignment.

The trial court denied defendant's motion for a new trial, and in doing so stated:

"It is the conclusion of this court that the plea of guilty made by the respondent on October 29, 1938, was freely and voluntarily made, and that the respondent was fully aware of the nature of the accusa-

tion made against him and the possible consequences of his plea. It is the further conclusion of this court that before such plea was accepted by the late Judge Weimer, the respondent was informed of his right to a trial by jury and of his right to be represented by counsel, and that the respondent indicated his desire to proceed without counsel and without a trial, and (that it was) his desire to have his plea of guilty received by the court and sentence imposed without further delay.

"At the hearing held on November 20, 1950, Charles Struble, who was sheriff of Kalamazoo county at the time of the respondent's arrest and arraignment, plea and sentence, also testified. His testimony indicated very convincingly that while tension in the community was rather high due to the commission of this crime and the manner of its commission, there was no threat of mob violence, no congregation of anything that could by any stretch of reasoning be considered a mob or a riotous gathering, and that while the sheriff felt inclined to take certain precautions and did take certain precautions to avoid any trouble, there was nothing in the situation then existing to indicate that the respondent had been coerced into a false plea, or that he had been placed in fear of insisting upon his constitutional rights.

"It is the conclusion of this court that the circumstances in this case are not similar to the circumstances which prevailed in the case of *DeMeerleer* v. *Michigan,* 329 US 663 (67 S Ct 596, 91 L ed 584), and that the determination of this motion cannot rest upon the ruling made by the supreme court in that case. While it is true that the respondent here was 17 years old at the time of his sentence, it is not true that he was unfamiliar with court proceedings. He was advised by the court as to his right to counsel. He expressed a desire not to have counsel. He was advised of the consequences of his plea, his plea was understandingly and voluntarily made, and all of his constitutional rights were properly accorded him.

"The motion is therefore denied and an order may be entered to this effect."

The principal issue upon this appeal is whether defendant was accorded due process of law within the meaning of the Constitution of the United States. Due process is the guarantee of rights essential to a fair hearing under the Federal Constitution. See *DeMeerleer* v. *Michigan,* 329 US 663 (67 S Ct 596, 91 L ed 584). In the above case it was held that the defendant was deprived of rights essential to a fair hearing. In the *DeMeerleer Case* defendant was 17 years of age, confronted with a serious criminal charge, hurried through unfamiliar legal proceedings without assistance of counsel, and not apprised of the consequences of his plea.

In the case at bar defendant was 17 years of age, of limited education, questioned for hours as to the extent of his participation in the crime, and did not have counsel, friends or relatives to advise him of the consequences of a plea of guilty. Moreover, there was high tension in the community and threats of violence directed at defendant.

The facts in this case are readily distinguishable from the facts in *People* v. *Coates,* 337 Mich 56. In that case defendant was 25 years of age and experienced in crime. In *People* v. *Quicksall,* 322 Mich 351,* defendant was 44 years of age and of fairly keen intellect with experience in court procedure. Under the facts and circumstances in this case, we are of the opinion that due process of law was not accorded defendant.

The judgment of conviction should be reversed and a new trial ordered.

Carr, C. J., and Smith, J., concurred with Sharpe, J.

---

* Affirmed in *Quicksall* v. *Michigan,* 339 US 660 (70 S Ct 910, 94 L ed 1188).—Reporter.

Boyles, J.   I am unable to concur in reversal and in the granting of a new trial.  As I see it, the only real similarity between this case and the *DeMeerleer Case*[1] is that in both cases the defendants were 17 years of age and pleas of guilty without attorney were received.

After this defendant had pleaded guilty, the judge had a conference with the defendant[2] to ascertain whether the plea of guilty was made freely and voluntarily without undue influence, coercion, promises or threats.  Thereafter the judge, in open court, announced that the plea of guilty would be accepted, and proceeded to take testimony to determine the degree of murder.  A record of those proceedings in open court was made and transcribed, and is in the printed record here.  Four witnesses were sworn and their testimony, which is in the record, seems to establish beyond a reasonable doubt that the defendant was guilty of first-degree murder with which he was charged.  The statements of the sentencing judge made in open court, on accepting the plea, and imposing sentence, are also in the record.

It may be conceded that we are not now concerned with the question whether or not this defendant is guilty of murder.  However, it is worthy of note that nowhere in these entire proceedings in the trial court, or here, has the defendant ever claimed that he was not guilty.  He still does not deny his guilt of having committed what appears to have been a most heinous, revolting, sadistic murder and mutilation of an elderly woman.

While it is not of controlling importance now, in considering here whether the defendant's constitutional rights have been invaded, the court should not ignore the difficulties in obtaining proof of the

---

[1] *People* v. *DeMeerleer*, 313 Mich 548, reversed on certiorari in *De-Meerleer* v. *Michigan*, 329 US 663 (67 S Ct 596, 91 L ed 584).

[2] CL 1948, § 768.35 (Stat Ann 1954 Rev § 28.1058).

commission of this crime after the lapse of 17 years, and also the possible consequences of returning to society a person likely to increase the public burden of preventing sex crimes. The record here before us made at the time of the defendant's arraignment and sentence includes the following statement made by the sentencing judge in open court at the time of defendant's arraignment and plea, in referring to the murdered woman, and the admissions of the defendant. The court said, in part:

"When she then reached the basement he [the defendant] exhibited the knife he had in his pocket and commanded her to remove her clothing; that she did; that he then raped her and then when she was about to leave the basement she made the remark 'You will pay for this;' that he realized that she recognized him, knew him as having been there before, and that then he struck her 1 severe blow on the head with the furnace shaker; that that 'knocked her out;' she fell to the floor. He then cut her throat and then stabbed her in the abdomen and, to use his words, 'her guts then came out' and he left. Such is his story to me in private, told very calmly; without any compulsion whatever. He insists that there is something wrong with his head; that he has had something akin to queer sensations before this.

"This, without question, is the most pronounced case of sadism in the criminal annals of this county."

The record here further shows that in 1950, the sentencing court held a hearing on a petition of the defendant seeking a new trial, obviously relying on the *DeMeerleer Case, supra*. The defendant was represented there in court by counsel. The trial court made a transcript of that proceeding, and it is here in our record, filed by the defendant. The court took the testimony of 8 witnesses, all of whom were cross-examined at length by the defendant's counsel. The defendant himself also was sworn and

testified briefly, disputing categorically the record made by the sentencing court at the time of his arraignment.

In compliance with the law in this State, the sentencing judge had interviewed the defendant in his chambers before receiving his plea of guilty, to assure the court that the plea was voluntary and not coerced, before accepting it. The record here shows that the trial court, before accepting the defendant's plea of guilty, stated on the record and in open court:

"In my private interview with respondent I assured him that he must not plead guilty unless he really is guilty; that he was not required to plead guilty; that he could have a trial by jury if he desired it. He assured me freely and voluntarily that he is guilty and that his one desire is to have it all over, to get to the institution to which he is to be committed, and to be under observation and to be examined."

The record here further shows that the defendant had been in trouble 4 or 5 times before committing this murder, consisting of breaking and entering and unlawful taking of automobiles, had been committed to the State boys' vocational school for delinquent boys, and that he was later arrested again for stealing an automobile.

Contrary to the *DeMeerleer Case,* this defendant was not arrested, brought into court, arraigned, and sentenced all in the same day. He had 4 days during which he might ask for an attorney, or for an opportunity to confer with friends or relatives. He makes no claim that at any time he made any such request. To the contrary, his insistence with the trial court that he was guilty, wanted to plead guilty and get it over with, negatives the idea that he wanted to confer with counsel or with friends. While he was questioned at length during those 4 days,

he falls short of showing that he was threatened or promised leniency. The record here would not support such a claim.

In the *Quicksall Case*, on certiorari to the United States supreme court from this Court,* Mr. Justice Frankfurter, delivering the opinion of that court, said of Quicksall, the petitioner, on his motion to vacate sentence and for a new trial:

"He claims that he was deprived of his right to counsel to the extent that the due process clause of the Fourteenth Amendment secures that right. The generalizations that are relevant to such a claim no longer call for elaboration. They have been set forth in a series of recent opinions [citing them]. * * * There is no evidence that at the time of his plea petitioner requested counsel or that appointed counsel was offered him. * * *

"Almost 10 years after his sentence, on April 18, 1947, the petitioner asked the circuit court for Kalamazoo county to vacate it and to grant him a new trial. He claimed the sentence had a constitutional infirmity in that he did not have the assistance of counsel and was prevented from communicating with counsel of his choice while he was hospitalized. * * *

"The trial judge took no stock in the reconstructing memory of the petitioner and denied his motion. The Supreme Court of Michigan affirmed. 322 Mich 351. We brought the case here out of a zealous regard for due observance of the safeguards of the Fourteenth Amendment in the enforcement of a State's penal code. 336 US 916 (69 S Ct 882, 93 L ed 1079). The record exacts the holding that the petitioner has failed to sustain the burden of proving such a disregard of fundamental fairness in the imposition of punishment by the State as alone would justify this court to invalidate the sentence by reason of the due process clause. * * *

---

* *Quicksall* v. *Michigan,* 339 US 660 (70 S Ct 910, 94 L ed 1188), affirming *People* v. *Quicksall,* 322 Mich 351.

"Since the Michigan courts disbelieved petitioner's allegations that he had not been allowed to communicate with his family, his friends or a lawyer, and no request was made by him for legal aid, the only question is whether, in the circumstances of this case, the failure of the record to show that he was offered counsel offends the due process clause. * * *

"In the light of what emerged in this proceeding upon a scrutiny of what took place before the same judge 10 years earlier, when petitioner's plea of guilty was tendered and accepted, it would stultify the due process clause to find that any right of the petitioner was infringed by the sentence which he incurred. *Foster* v. *Illinois,* 332 US 134, at 138 (67 S Ct 1716, 91 L ed 1955) ; *Bute* v. *Illinois,* 333 US 640, 670–674 [68 S Ct 763, 92 L ed 986]."

The *Quicksall Case* is directly in point and controlling here. This Court should enter an order affirming the denial of the defendant's petition in the trial court to vacate sentence and for a new trial.

BUTZEL, REID, DETHMERS, and KELLY, JJ., concurred with BOYLES, J.