267 F.2d 507
 UNITED STATES of America ex rel. Joseph MARCIAL, a/k/a Joseph Johnson, Petitioner-Appellee.
v.
Edward M. FAY, Warden, Green Haven Prison and The People of the State of New York, Respondents-Appellants.
 No. 204.
 Docket 25395.
 United States Court of Appeals Second Circuit.
 Argued December 9-10, 1958.
 Decided January 23, 1959.
 
 George K. Bernstein, Asst. Atty. Gen. of the State of New York (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, Asst. Solicitor General, New York City, and Michael Freyberg, Asst. Atty. Gen. of the State of New York, on the brief), for respondents-appellants.
 Arthur B. Kramer, of Franken, Kramer & Bam, New York City, for petitioner-appellee.
 Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 Joseph Marcial, the petitioner, was convicted in 1934, on a charge of robbery in the second degree in the state courts of New York. Again in 1949 he was convicted of robbery and was sentenced, as a second felony offender, to a term of ten to thirty years. McKinney's Consol.Laws, New York Penal Law, c. 40, § 1941. Alleging that his first conviction was without due process of law, Marcial sought a writ of habeas corpus, in a petition praying an order that he be resentenced as a first offender upon the 1949 conviction.
 
 
 2
 The case is now before us for the second time. The first appeal, taken from the denial of a petition for habeas corpus without a hearing, resulted in a reversal by the court sitting en banc. 2 Cir., 247 F.2d 662, certiorari denied 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274. We held at that time that Marcial had exhausted his state court remedies and that the allegations in his petition entitled him to a hearing on the validity of his 1934 conviction. Upon remand Judge Dimock held a hearing and determined in an unreported memorandum opinion that the relief prayed in the petition should be granted. From his order, the respondent appeals.
 
 
 3
 The evidence at the hearing below disclosed the following facts. In August, 1934, Marcial had been arrested on a charge of robbery in the first degree for which the maximum sentence was 30 years. New York Penal Law, § 2125. He himself testified that, when drunk, he had entered a shoe store without a gun "and then pushed the old fellow and says `This is a robbery' * * * and I told him I want his money and I only had 51 cents in my pocket and he gave me no money": that when his victim made an outcry he had fled. He was arrested a few minutes later. A notice of appearance in his behalf was filed in the state court by Joseph Margolin, Esq., a member of the New York Bar. In October, Marcial was indicted for robbery in the first degree (armed robbery) and while represented by Mr. Margolin entered a plea of not guilty which, two weeks later, on motion of his counsel, was amended by a specification of insanity.
 
 
 4
 The minutes of the hearing below further show that a Lunacy Commission was appointed which, after hearings at which Marcial, but not his attorney, was present, determined that Marcial was sane. Over objection by the State, the judge below received in evidence the testimony of the arresting officer given before the Lunacy Commission in 1934. The officer's testimony was that when Marcial fled the store he apprehended him after chasing him in a police car for a block and a half and then returned him to the shoe store where the victim, a man of about 75 years of age, reported that Marcial had hit him over the head with the butt of a revolver and took about $7; that when immediately thereafter Marcial was searched no gun and not more than 51 cents was found on his person; and that on retracing the course of Marcial's flight he found no gun.
 
 
 5
 On December 17, 1934, Marcial changed his plea to guilty to the lesser charge of robbery in the second degree for which the maximum sentence was fifteen years. New York Penal Law, § 2127. And on January 11, 1935, he was sentenced by the State Court judge to 7½ to 15 years imprisonment. Whether he was represented when he pleaded and when he was sentenced were in issue below.
 
 
 6
 As to this, the minutes below show that Marcial testified that at each appearance in court, change of plea and sentence, he was unrepresented by counsel. Similar allegations in his petition had led us on the former appeal to decide that he was entitled to a hearing. But by the time of the hearing the stenographer's minutes for December 17, 1934 had been found and were offered in evidence showing Mr. Margolin's presence when the plea to robbery without arms was entered. On the strength of that official record, the judge below found that the petitioner had been mistaken in his testimony to the contrary. However, no court record was found to show whether or not Marcial had been represented when sentenced: as to this, Mr. Margolin, who had appeared for him on December 17, 1934, could not specifically remember. Solely on petitioner's oral testimony the judge below found for him on that issue. Whether that finding was warranted in view of all the evidence, it is not necessary for us now to decide. For purposes of this opinion we take that fact to have been rightly found.
 
 
 7
 However, absence of counsel when sentence is imposed does not necessarily violate the requirements of due process. That can be established only by a showing that the proceedings were so fundamentally unfair as to result in injustice. Uveges v. Pennsylvania, 334 U.S. 437, 441, 69 S.Ct. 184, 93 L.Ed. 127; Quicksall v. Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188; United States ex rel. Turpin v. Warden of Green Haven Prison, 2 Cir., 190 F.2d 252. We have been pointed to no case, holding that mere absence of counsel at the time of sentence will constitute lack of due process when the conviction rested on a plea of guilty entered on advice of counsel and not shown to have been induced by coercion or misrepresentation. Whether such a holding would ever be proper we will not attempt to say. We do hold, however, that on the hearing below in this case the petitioner failed to sustain the burden, Quicksall v. Michigan, supra, of proving a lack of due process. The sentence imposed was not in excess of the maximum authorized by the law of New York, and even if it could justly be deemed severe it was not demonstrative of a lack of due process. In Townsend v. Burke, 334 U.S. 736, at page 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, a case on which the petitioner heavily relies, it was said: "The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."
 
 
 8
 In the Townsend case, the defendant was without counsel both when arraigned and when, on the next day, he was sentenced. His conviction was reversed because, as the Supreme Court opinion stated, 334 U.S. at page 740, 68 S.Ct. at page 1255: "[I]t is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand."
 
 
 9
 Learned counsel now appearing for the petitioner seems to think this holding applicable here because the defendant was "prejudiced by the court's own misreading of the record." It is contended that the judge's reported comment at the session when sentence was imposed shows that he misread or misunderstood the incidents of Marcial's crime for which he was imposing sentence and mistakenly thought, even though the plea was to the charge of robbery without arms, that Marcial had in fact had a weapon. The comment on which this attack is based we set forth in the margin.[1]
 
 
 10
 Even if at this date the judge below could properly find that the robbery had been without a weapon, we fail to see how anything in this comment demonstrates that the State Judge in imposing sentence acted under a misapprehension. Marcial's counsel points to the judge's assertion "You are no different than the others" and insists that "the others" refers to comment following the pronouncement of sentence addressed to "these fellows who go out with guns are potential murderers." This seems to us an unnecessary, indeed a strained, construction. If this assertion had been deemed applicable to Marcial, one would expect it to have been included in the comment preceding the sentence which was expressly directed to Marcial.
 
 
 11
 We think it more reasonable to take "the others" to mean those with bad juvenile delinquency records, those against whom a warrant was outstanding, those who had good enough brains and those who held up and scared old men. All of this comment was addressed expressly to Marcial and was pertinent to him. The pronouncement made after imposition of sentence, in contrast, was stated in general terms and in the third person. It is plausible to believe that, perhaps after Marcial had withdrawn from the Bar of the court, it was intended for broadcast through attending news reporters as a caution to armed thugs to expect heavier sentences than that meted out to Marcial.[2] This seems more consistent with the judge's complete and accurate knowledge of the facts three weeks earlier at the time Marcial changed his plea, as shown by the judge's comments in accepting the change of plea.
 
 
 12
 We think the evidence, even if it had all been properly received, was too slight and ambiguous to bring the case within the Townsend holding or to support the finding of a mistake, careless or otherwise, as to a fact entering into the formulation of a judicial judgment officially recorded some 23 years before the claim of mistake was first asserted. But even if the evidence here sufficed to prove that the sentencing judge had acted under a misapprehension, the mistake was not an inexcusable one like that disclosed in the Townsend case. Here evidence had come in that the victim had said the robbery was with a gun: the defendant testified that it was without a gun. If the sentencing judge made the wrong solution of this conflict, it was at most an error of fact. And in the Townsend opinion it was said, 334 U.S. at page 741, 68 S.Ct. at page 1255: "Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree." Consequently, in this case the error would not affect the underlying conviction as it did in Townsend where the defendant, unlike Marcial, had been without counsel even when arraigned.
 
 
 13
 We also hold that to prove the alleged mistake it was erroneous to receive in evidence in the hearing below the testimony of the arresting officer which was clearly hearsay for present purposes. Even the officer's testimony showed that Marcial's testimony that he had no gun was directly contradicted by the victim at the time. And the victim, of course, who was 75 years old in 1934, was not offered as a witness below.
 
 
 14
 The judge below also based his order on the fact that under New York Code of Criminal Procedure, § 337; People v. Longe, 1945, 269 App.Div. 474, 57 N.Y.S.2d 337, Marcial, upon the imposition of the sentence, might have been well advised, if he had had a lawyer then to advise him, to withdraw his plea of guilty and go to trial on the indictment charging armed robbery. But we can find nothing in the record as it stood at the time of sentence in 1935 which would have warranted the state court judge in the exercise of his discretion to allow Marcial under § 337 to withdraw his plea to the charge of unarmed robbery upon which he had just been sentenced and plead not guilty to a charge of armed robbery when shortly before, on the recommendation of the State's Attorney and in the presence of his own counsel, he had been allowed to plead to the lesser charge.[3] And even if he had gone to trial on the indictment charging armed robbery, he would, on the one hand, have been exposed to the possibility of the heavier penalty. On the other hand, on the facts to which he testified in the hearing below, even if the People had failed to prove him to have been armed, he would have had scant hope to escape conviction at least of unarmed robbery. New York Code of Criminal Procedure, § 444. People v. Steinmetz, 240 N.Y. 411, 148 N.E. 597. Thus the possibility that he suffered prejudice because of lack of advice to withdraw his plea was, we think, far too remote and too slight to constitute a lack of due process.
 
 
 15
 On this appeal the petitioner has been ably represented by Mr. Arthur B. Kramer, of the New York Bar, acting under the assignment by the Court. We are grateful for his cooperation.
 
 
 16
 Reversed and remanded with a direction to dismiss the petition.
 
 
 
 Notes:
 
 
 [1]
 "The defendant is colored, married, 22 years of age, got a child. You have got a bad juvenile delinquency record. There is a warrant out from Napanach Institute for you too. You have got a good enough brain however. You went up to that shoe store and you held up this old man. You had him scared to death. You are no different than the others. Sing Sing Prison seven years and six months to fifteen years maximum. We have got to stop this robbery in this town, and if it is up to me to do it I will do it. These fellows who go out with guns in their hands are potential murderers."
 
 
 [2]
 The judge below also noted that the state court judge had cautioned the petitioner against further violation of the law some eight months earlier when he had dismissed an indictment for seduction against him. We cannot see that this incident tends to prove that the sentence was based upon a mistake of fact or is in other respects relevant on the issue of due process
 
 
 [3]
 In People v. Steinmetz, cited infra in the text, the change of plea had been made before the defendant had been sentenced and had not been sought or permitted for the obvious purpose of enabling the defendant to escape a sentence already imposed