**UNITED STATES ex rel. James J. Savini, Petitioner-Appellee,**

v.

**J. Vernal JACKSON, Warden, Clinton Prison, Dannemora, N. Y., Respondent-Appellant.**

**No. 125, Docket 24749.**

United States Court of Appeals
Second Circuit.

Argued Oct. 17, 1957.

Decided Nov. 29, 1957.

35. And see, Chase National Bank v. C. I.R., 1955, 25 T.C. 617.

Michael Freyberg, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen. of the State of New York, John R. Davison, Sol. Gen., Albany, N. Y., Raymond B. Madden, Asst. Atty. Gen., and Allan N. Smiley, Deputy Asst. Atty. Gen., on the brief), for respondent-appellant.

Louis Lauer, New York City, for petitioner-appellee.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal from an order of Judge Brennan in the United States District Court for the Northern District of New York, sustaining, after hearing, a writ of *habeas corpus* which had issued on the petition of James J. Savini, an inmate of a New York State prison where he was confined by a judgment of conviction in 1954 in the County Court of Queens County, New York, on his plea of guilty to a felony charge of robbery, second degree. The sentence imposed, 7½ to 8 years in Sing Sing State Prison, under the Multiple Offender Law of New York, Section 1941 of New York Penal Law, was predicated upon the status of the relator (appellee) as a second offender by virtue of his conviction, in the Circuit Court of Calhoun County, Michigan, in 1943, on his plea of guilty to a charge of rape. The petition below was based on the conceded fact that he was convicted and sentenced to 7½ to 15 years in Michigan without having been advised of his right to counsel and in ignorance of that right.

The initial problem presented below was whether under the applicable state law a corrective process was available and had been exhausted within the requirements of 28 U.S.C.A. § 2254. As to this, it was undisputed that after conviction in the New York court the District Attorney had filed an information charging that the relator had previously, in 1943, been convicted and sentenced in Michigan for rape, and the relator, who had the benefit of counsel in New York, had acknowledged in open court that he was the person who had thus been convicted in Michigan. The respondent, appearing herein by the Attorney General and Assistant Attorney General of New York, asserts that under Gayes v. State of New York, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962, the relator at this juncture had opportunity to challenge the validity of his Michigan

conviction and contends that his failure to do so now bars the present attack on that judgment. However, the respondent cites no New York authority for the assertion. People v. McCullough, 300 N.Y. 107, 89 N.E.2d 335, decided after Gayes v. State of New York, supra, is to the contrary. And believing that Gayes is no longer applicable we have previously held that under New York law the New York courts will not entertain an attack on a judgment of conviction entered in another state. United States ex rel. Smith v. Jackson, 2 Cir., 234 F.2d 742; United States ex rel. Turpin v. Snyder, 2 Cir., 183 F.2d 742; United States v. Morgan, 2 Cir., 202 F.2d 67, affirmed 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. We adhere to that holding.

But had the relator exhausted his remedies in the courts of Michigan? As to this, the pertinent facts are that after his Michigan sentence in 1943 the relator raised no question as to the validity of the sentence until shortly before September 26, 1955, when the Michigan Circuit Court denied "an application for a Writ of Error, Coram Nobis" (in which relator attacked his rape conviction for failure to advise as to his right of counsel) because not timely made and not sufficient to show deprivation of any constitutional rights. Failure to appeal from this action resulted in the denial of his original habeas petition to the court below. He then again moved for coram nobis in Michigan and on the denial of his motion appealed to the Supreme Court of Michigan which on November 8, 1956, vacated the order denying the motion and directed a hearing thereon "if, as and when the defendant [the relator in these proceedings] finds it possible to be present in open court." Thereafter the Michigan Court refused to waive the requirement of his personal presence at the hearing thus conditionally authorized and the New York Department of Correction on November 23, 1956 advised the relator that under the law it could not arrange for his presence at a Michigan hearing in advance of his release.

On November 29, 1956, the relator again filed below a habeas petition; the writ issued and a hearing was had at which the relator appeared in person and by court-appointed counsel. Judge Brennan, in a memorandum decision, held that the relator's "state court remedies in Michigan are exhausted and this court may assume jurisdiction." We think that ruling right. United States ex rel. Smith v. Jackson, supra, and United States ex rel. Turpin v. Snyder, supra. It is true that ordinarily habeas corpus will not lie unless the relator has sought certiorari from the Supreme Court to review the state court proceedings. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. But certiorari may be sought only from a final judgment, 28 U.S.C.A. § 1257, and it is clear that no such action has been taken by the Michigan Supreme Court in the present case. Moreover, where, as here, the state court's denial is based upon an adequate state ground, i. e., the refusal to hear the merits of the claim until the relator appears in open court, the failure to petition for certiorari does not bar a subsequent habeas corpus action. Darr v. Burford, supra; White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. As Judge Brennan observed, if the relator "is to obtain any relief by way of a resentence in the New York State courts as a first, rather than a second felony offender, then of course he must be able to obtain same prior to his discharge from the New York State prison."

We come now to a recital of the facts relating to the constitutional question. It was undisputed that at the time of the Michigan episode the relator, a resident of New York, was a married man, 21 years old, and a private in the armed forces of the United States on duty at Fort Custer, Michigan. He was arrested on a charge of rape on Tuesday, June 29, 1943, and after a night in solitary confinement, on Wednesday morning, June 30, 1943, he was arraigned before the Circuit Court of Calhoun County, Michigan, at Battle Creek. In open court, an

information * as set forth in the margin was read, charging him in the language of the statute with the crime of rape, to which he immediately pleaded guilty. In answer to inquiries by the Judge he stated that his plea was given without inducement by promises of leniency or by coercion [we may here interpolate that never thereafter has he asserted such inducement]. He was then interviewed by the Judge in chambers, but what transpired at the interview does not appear in the record. Immediately thereafter he was sentenced in open court to a term of imprisonment of 7½ to 15 years.

At the time of his arraignment and sentence the relator was not represented by counsel and had never been advised that he was entitled to counsel. Indeed, it is stated in appellant's brief that in 1943 it was not the practice of Michigan courts to assign counsel in non-capital criminal cases: that it was not mandatory to assign counsel until the adoption of Rule 35–A, Michigan Court Rules, which became effective September 1, 1947. Nor had the relator been advised as to the factual elements of rape or the factual distinctions between the three cognate offenses in the statutory scheme, viz., rape, assault with intent to commit rape, and simple assault. He had not been advised that Michigan courts had held that to constitute rape "resistance to the utmost" was an essential element, People v. Geddes, 301 Mich. 258, 3 N.W.2d 266, 267; that it was es-

sential that there be "no consent by the prosecutrix during any part of the act," Brown v. People, 36 Mich. 203, 205; and that specific intent, where an essential element, might be negatived by proof of voluntary intoxication, People v. Guillett, 342 Mich. 1, 69 N.W.2d 140.

At the hearing below the relator testified without contradiction that at the time of the alleged offense both the prosecutrix, whom concededly he had met for the first time on the day of the alleged offense, and he himself were intoxicated; that at his arraignment he was scared and confused; that he had never understood the implications of the charge and the consequences of his plea of guilty; that although he could not deny that he had committed the offense he did not actually know that he was guilty either.

Judge Brennan, in his opinion, after saying that at the hearing below "the petitioner testified in his own behalf and gave every appearance of an intelligent alert young man," came to the following conclusions:

"Here there is no lack of intelligence; no charge of overreaching on the part of the prosecuting authorities; no indication of anything but kindly treatment on the part of the trial court. Nevertheless I cannot say that this petitioner has had the full measure of the protection which the law affords when he is arrested, arraigned and con-

---

* "State of Michigan,
  "The Circuit Court for the County of Calhoun.
  "Calhoun County, ss.
  "Edmund R. Blaske, Asst. Prosecuting Attorney in and for the County of Calhoun, aforesaid, for and in behalf of the People of the State of Michigan, comes into said Court, in the May term thereof, in the year one thousand nine hundred and forty-three and gives the Court here to understand and be informed that James J. Savini late of the Township of Pennfield in the County of Calhoun and State of Michigan, heretofore, to-wit: on the 20th day of June A.D.1943, at the Township of Pennfield in the County of Calhoun aforesaid.

"Feloniously, with force and arms, in and upon one Vivian Moats, a female of the age of sixteen years or more, to-wit: of the age of seventeen years, did make an assault, and her the said Vivian Moats then and there by force and against her will, did ravish and carnally know
"Contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the People of the State of Michigan
  "/s/ Edmund R. Blaske
        Asst. Prosecuting Attorney.
  "In and for the County of Calhoun, Mich."

victed in a period of forty-eight hours of a crime for which he might be confined for life without the aid or assistance of family, friends or advisers and without any understanding that he had the right to the experienced advice of an attorney before being required to enter his plea. * * * As far as the record before me is concerned, the circumstances of the Michigan conviction, * * * are such as to lead to the conclusion that same lacks the traditional protection which is afforded persons charged with serious crimes under our notions of justice. * * * *"

■ We think these conclusions were sound. Especially in view of the gloss which Michigan decisions have put upon the rape statute, we think it was eminently sensible for the judge to infer that upon merely a routine reading of the information in open court, the relator unaided could not have intelligently formulated his plea. And that a plea entered under such circumstances was fundamentally unfair is implicit in the Michigan decisions which have held that in rape cases the court must instruct the jury on each of the three offenses in the statutory scheme, enumerated above. People v. Abbott, 97 Mich. 484, 56 N.W. 862. If in contemplation of state law a lay juror, to understand the essentials of the offense charged, needs such instruction, surely the lay accused, under the pressures normally attendant upon arraignment, needed more than the legal language of the formal information as it was read to him in the courtroom in order intelligently to formulate a plea.

The Judge noted the relator's testimony that he failed to understand and appreciate the gravity of the offense charged. As to this, the appellant on appeal points to the Articles of War, Art. 110, formerly § 1582 of 10 U.S.C.A.,[1] which requires that some fifty specified Articles be read and explained to every

soldier every six months. Among these is Article 92, formerly § 1564 of 10 U.S.C.A.,[2] which provides a sentence of death or imprisonment for rape upon conviction by a court martial. The appellant asserts in its brief that the relator's "Service Record" shows that the Articles of War were read to him as late as December 8, 1942. From this it is argued that the relator lied when he testified that although he knew that rape was punishable by a prison sentence he "had no idea * * * it could have carried a life sentence." Although the point was not raised below, we are asked now to give it consideration and, unless we are now prepared to reverse the order below, to remand the case for reconsideration and evaluation in the light of this impeaching material. This we decline to do feeling that the impact of the data is too remote to change the result. Moreover, Article 92 gave no indication of the penalty for rape in Michigan under whose laws the relator was charged and arraigned.

Furthermore, we think the operative conclusions reached by the Judge were in accord with recent judicial decisions. Especially pertinent is De Meerleer v. People of State of Michigan, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584, where the court said:

"Here a seventeen year old defendant confronted by a serious and complicated criminal charge, was hurried through unfamiliar legal proceedings without a word being said in his defense. At no time was assistance of counsel offered or mentioned to him, nor was he apprised of the consequences of his plea. Under the holding of this Court, petitioner was deprived of rights essential to a fair hearing under the Federal Constitution." 329 U.S. at page 665, 67 S.Ct. at page 597.

The result reached was required whether one views the crucial deprivation to have been a failure to assign

---

1. Now Uniform Code of Military Justice, art. 137, 10 U.S.C.A. § 937.

2. Now Uniform Code of Military Justice, art. 118, 10 U.S.C.A. § 918.

counsel, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126; Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 738, 95 L.Ed. 1353; Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; United States ex rel. Marcial v. Fay, 2 Cir., 247 F.2d 662; or a deprivation of opportunity to obtain counsel of his own choosing. Chandler v. Fretag, 348 U.S. 3, 10, 75 S.Ct. 1, 99 L.Ed. 4; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739. Cf. People v. Marincic, 2 N.Y.2d 181, 139 N.E.2d 529.

The appellant relies chiefly on Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Quicksall v. People of State of Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188; and United States ex rel. Turpin v. Warden of Green Haven Prison, 2 Cir., 190 F.2d 252, certiorari denied sub nom. Turpin v. Warden of Green Haven Prison, 342 U.S. 872, 72 S.Ct. 116, 96 L.Ed. 656. As able counsel for the appellee points out, none of these cases pertained to the situation present in this appeal: occasional points of resemblance, in our judgment, are more than counterbalanced by factors characteristic of the class of cases of which De Meerleer v. People of State of Michigan, supra, may be taken as illustrative. Betts v. Brady, supra, was a case in which denial of the writ was affirmed. But in De Meerleer the Court, by citing Betts v. Brady, indicated that the Betts ruling was not applicable to such a case as that now before us in which an inexperienced youth was left to face a complicated charge without aid of counsel.

In Bute v. Illinois, supra, it was held by a divided court that when the trial judge "had admonished and explained to the said defendant the consequences and penalties, which will result from" a plea of guilty to an indictment which states the charges "in simple terms, not ordinarily capable of being misunderstood by a 57-year old man," a plea of guilty made without advice as to the right to counsel did not violate due process. [333 U.S. 640, 68 S.Ct. 778.] We think the decision below not in conflict with that decision.

Quicksall v. Michigan, supra, is to be distinguished in that there evidence on the post-conviction hearing showed that the defendant, who was over 40 years of age and had previously served penitentiary terms in two states, was aware of the consequences of his plea of guilty. Moreover, the Supreme Court observed that "the Supreme Court of Michigan rejected the notion that he was not aware of his right to be represented by an attorney." [339 U.S. 660, 70 S.Ct. 913.] That case, therefore, had several points of difference from that now before us.

And in United States ex rel. Turpin v. Warden of Green Haven Prison, supra, it is true that the relator was unsuccessful in attacking a Wisconsin conviction on the ground that the presiding judge had failed to advise him of his right to counsel. But in that case there was credible evidence that the District Attorney had explained to him the crimes charged and advised him of his right to counsel. No comparable evidence is in the record of this appeal.

■■ The appellant stressed the difficulty of the State in such a case as this in meeting an attack on the constitutionality of a conviction in a sister State, urging that to alleviate that burden the courts should adopt a drastic rule of evidence whereby clear and convincing evidence is required to support a finding of lack of due process. Obviously, it *is* a great burden for the State to find and bring on for hearing in New York witnesses, including official court personnel, from distant sister States. Also great is the burden of transporting a prisoner from New York to a distant State and there contest the validity of a conviction in the court in which it occurred. But the burden, we suggest, is an inescapable incident to legislation such as the New

York Multiple Offender Law. To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions. Constitutional guarantees should not be shorn of their vitality merely to facilitate the administration of a penal policy whereby the sentence on one conviction depends in part on a prior conviction.

The court below ruled that the New York sentence under which the relator is presently detained was illegal in that it depended upon a prior conviction in Michigan which was unconstitutional: to that extent it sustained the writ. It ordered, however, that the relator be remanded pending proceedings to be promptly taken for his return to the County Court of Queens County for resentence.

We hold that the action taken was in all respects proper. And we acknowledge our gratitude to Mr. Lauer who at our request gave truly effective representation to the relator-appellee on this appeal.

Affirmed.