254 F.2d 438
 The UNITED STATES of America, ex rel. James FARNSWORTH,
Relator-Appellant,
v.
Robert E. MURPHY, Warden of Auburn State Prison and The
People of the State of New York, Respondents-Appellees.
 No. 191, Docket 24513.
 United States Court of Appeals Second Circuit.
 Argued Dec. 13, 1957.
Decided April 15, 1958.
 
 Nicholas John Stathis, New York City, for relator-appellant.
 George K. Bernstein, Deputy Asst. Atty. Gen., of the State of New York (Louis J. Lefkowitz, Atty. Gen., of the State of New York, John R. Davison, Sol. Gen., Albany, N.Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Raymond B. Madden, Asst. Atty. Gen., and Allan N. Smiley, Deputy Asst. Atty., Gen., of counsel on the brief), for respondents-appellees.
 Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.
 LUMBARD, Circuit Judge.
 
 
 1
 Farnsworth appeals from an order of Judge Brennan, Northern District of New York, denying, without a hearing, his petition for a writ of habeas corpus on the ground that it failed to allege an exhaustion of state remedies or a substantial federal question. The case is before us by virtue of Judge Brennan's issuance of a certificate of probable cause, 28 U.S.C.A. 2253.
 
 
 2
 The petitioner is presently incarcerated in Auburn State Prison, Auburn, New York, as the result of his conviction for attempted burglary in the third degree in the County Court of Westchester County in December 1946 and his subsequent conviction as a fourth felony offender under which he was sentenced on March 26, 1947 to a term of from fifteen years to life imprisonment under the provisions of the New York Multiple Offender Act, New York Penal Law, McKinney's Consol.Laws, c. 40, 1942. His prior Felony convictions at the time of the 1947 sentence were four in number:[1]
 
 
 3
 1. A plea of guilty on September 9, 1929 to four indictments charging forgery in the Criminal Court of Baltimore, Maryland. Sentence imposed was one year in prison for each count, to be served concurrently.
 
 
 4
 2. Conviction on May 3, 1935 for burglary and grand larceny in the United States District Court for the District of Columbia. Sentenced to 3 to 6 years.
 
 
 5
 3. Conviction on November 17, 1939 in the Corporation Court of the City of Norfolk, Virginia for a burglary committed on March 5, 1935. Sentenced to 15 years.
 
 
 6
 4. Conviction on December 14, 1939 in the Corporation Court of the City of Norfolk, Virginia for burglaries committed on February 18, 1935 and March 1, 1935. Sentenced to 5 years to run concurrently with the 15 year sentence above.
 
 
 7
 Since his sentence in 1947 the petitioner has engaged in various legal maneuvers in an attempt to have it reduced. See Farnsworth v. Maryland, 1948, 334 U.S. 853, 68 S.Ct. 1508, 92 L.Ed. 1775; Farnsworth v. United States, 1952, 198 F.2d 600, 91 U.S.App.D.C. 121, certiorari denied 344 U.S. 915, 73 S.Ct. 338, 97 L.Ed. 706; People ex rel. Farnsworth v. Murphy, 4 Dept. 1952, 279 App.Div. 968, 112 N.Y.S.2d 311, affirmed 1953, 305 N.Y. 630, 111 N.E.2d 889, reargument denied 305 N.Y. 828, 113 N.E.2d 565; and United States ex rel. Farnsworth v. Murphy, 2 Cir., 1953, 207 F.2d 885 wherein Judge Learned Hand alludes to five or six previous unreported petitions from the prisoner. He finally succeeded in having the District of Columbia conviction vacated. Farnsworth v. United States, 1956, 98 U.S.App.D.C. 59, 232 F.2d 59. This did not, however, affect the term of his present prison confinement, for the Westchester Country Court, on an application for a writ of coram nobis, ruled that Farnsworth was still properly sentenced as a fourth felony offender by reason of his prior Baltimore conviction and the two prior Norfolk, Virginia convictions.[2] By the present petition Farnsworth seeks to upset the 1929 Baltimore convictions hoping thereby to be resentenced as a third offender.
 
 
 8
 The petitioner alleges that on December 24, 1947, after discovering that his conviction in Baltimore in 1929 was for a felony, he moved in the Baltimore Criminal Court to 'correct the record' to show that he had been convicted of a misdemeanor rather than a felony. On January 6, 1948 this motion was denied. Thereafter, on February 19, 1948 Farnsworth petitioned the Supreme Judicial Bench of Baltimore by a writ of coram nobis to vacate his 1929 Baltimore convictions on the ground that his constitutional rights had been violated in that his plea of guilty was entered under circumstances which deprived him of due process of law and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. The specific grounds set out in that petition are the same on which Farnsworth is presently relying. On February 26, 1948 an order issued from the Supreme Judicial Bench, signed by its eleven judges, which, after reciting the making of the motion and its consideration, reads: 'Ordered that the same be and it is hereby denied and stricken from the files.' Thereafter Farnsworth wrote to the Chief Judge of the Court of Appeals of Maryland requesting permission to appeal from the determination of the Supreme Judicial Bench in forma pauperis. On March 30, 1948 the clerk of the Court of Appeals in replying to Farnsworth advised him that no forma pauperis appeal was permitted except in capital cases. A petition for certiorari to the United States Supreme Court was likewise denied. Farnsworth v. Maryland, 1948, 334 U.S. 853, 68 S.Ct. 1508, 92 L.Ed. 1775. There is no allegation in the present petition that Farnsworth was a pauper at the time when he sought to appeal to the Court of Appeals of Maryland, but since he was in prison at the time, and the petitions he has sent us all appear in forma pauperis, we will treat it as if such allegation was made.
 
 
 9
 The District Court in deciding that Farnsworth had not exhausted his state remedies as required by 28 U.S.C.A. 2254, relied on the decisions of United States ex rel. Kalan v. Martin, 2 Cir., 1953, 205 F.2d 514 and United States ex rel. Rheim v. Foster, 2 Cir., 1949, 175 F.2d 772. Those decisions no longer represent the law. United States ex rel. Marcial v. Fay, 2 Cir., 1957, 247 F.2d 662, 665. 'Where the only state remedies are inaccessible to a prisoner because of his poverty, his failure to pursue those remedies does not bar him from applying to the federal courts for relief.' United States ex rel. Embree v. Cummings, 2 Cir., 1956, 233 F.2d 188, 189.
 
 
 10
 Moreover, it would appear that Maryland does not provide any way in which Farnsworth may test his 1929 Baltimore conviction. Coram nobis is unavailable, Bernard v. State, 1949, 193 Md. 1, 65 A.2d 297, as is habeas corpus. Code of Maryland (1951 Edition) Article 42, 3. Nor would relief lie in the New York Courts. People v. McCullough, 1949, 300 N.Y. 107, 89 N.E.2d 335, certiorari denied 1950, 339 U.S. 924, 70 S.Ct. 615, 94 L.Ed. 1346; United States ex rel. Smith v. Jackson, 2 Cir., 1956, 234 F.2d 742.
 
 
 11
 The petitioner has thus exhausted his state remedies and we turn now to the petitioner's allegations. We find they are not sufficient to present a federal question.
 
 
 12
 The four 1929 indictments with which Farnsworth was charged in the Baltimore court each contain three counts: (1) forgery of a check; (2) uttering the check; and (3) obtaining money in the amount of the forged check by false pretenses. Under the Maryland statutes the first two counts charged felonies, the third a misdemeanor.
 
 
 13
 The petitioner in fact pleaded guilty to Court 1 of each indictment. He claims that his constitutional rights were violated in '* * * that said Baltimore (Criminal) Court wrongfully and unlawfully accepted * * * petitioner's plea of guilty without benefit of counsel and without advising petitioner of the true nature of the various crimes charged against him, or, the legal consequences or the effect of his plea, or, asking petitioner if he had any cause to show why judgment should not be pronounced against him. * * *' He further alleges that '* * * he believed he was being tried for obtaining money by false pretenses (bogus checks)' and that he pleaded guilty on the advice of some unnamed 'officials of the Baltimore City Jail,' apparently in order to get a light sentence.
 
 
 14
 In fact Count 1 of each indictment charged a felony and it was these counts to which the records show Farnsworth pleaded guilty. The four counts charged that on four occasions he drew checks to himself in the sums of $93.10, $93.10, $46.10 and $46.10 respectively, and forged the name of Lieutenant Sylvan Berliner as signer. All of the checks were payable to Corporal James B. Farnsworth. Three of the checks were drawn on the Battery Fund of Battery C, 62nd Artillery, with Lieutenant Berliner's name signed as commanding officer. The fourth check was drawn on the personal account of Lieutenant Berliner. All of the forgeries took place in December of 1928, and according to the third count of each indictment, farnsworth used the checks to purchase civilian clothes, pay a hotel bill, and purchase some undescribed article from the Arundel Building & Construction Co. of Baltimore. Nowhere does Farnsworth allege that he was innocent of forging Lieutenant Berliner's name to those checks or cashing them. He himself states that he believed he was being tried for obtaining money by bogus checks. The tenor of all that he says makes it clear that he concedes his guilt to obtaining money by bogus checks.
 
 
 15
 The petitioner's main contention is that he was deprived of his constitutional rights under the Fourteenth Amendment because he was not assigned counsel and was not advised of his 'right' to assigned counsel at the time of the entry of his plea of guilty.
 
 
 16
 The crime of forgery was not a capital offense in Maryland, Annotated Code of Maryland (1924 Edition) Article 27, 44. The due process clause of the Fourteenth Amendment does not give to a defendant charged with a non-capital criminal offense a right to assigned counsel unless there are circumstances surrounding the conviction showing that '* * * for want of benefit of counsel an ingredient of unfairness actually operated in the process that resulted in (the defendant's) confinement.' Quicksall v. Michigan, 1950, 339 U.S. 660, 666, 70 S.Ct. 910, 913, 94 L.Ed. 1188; Uveges v. Pennsylvania, 1948, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; Com. of Pa. ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126.[3] Only where the unfairness is of greater substance than that which incidentally and ordinarily results from the failure of a defendant to have legal advice at the time of his plea do we get to the inquiry of whether there has been a failure of due process.
 
 
 17
 The petitioner in an attempt to make out the requisite showing of 'fundamental unfairness' alleges that:
 
 
 18
 '(a) * * * petitioner's plea of guilty was entered through ignorance as to the true nature of the charges against him and of the consequences of such plea; that he was never furnished with a copy of the charges alleged against him and did not know he was entitled to the same; that when arraigned in Court the charges were not read to him and he believed he was being tried for obtaining money by false pretenses (bogus checks).'
 
 
 19
 '(b) That petitioner was unable to procure counsel for want of funds; that he had never previously been arrested,[4] and was unfamiliar with criminal law, and was bewildered by court procedure; that he was not furnished with counsel; and that he was not cautioned by the Court as to the nature or the consequences of his guilty plea.'
 
 
 20
 '(c) That officials of the Baltimore City Jail advised petitioner his trial would be treated as a misdemeanor case; and that influenced by their representations and instructions he pleaded guilty when prompted to do so.'
 
 
 21
 '(d) That had petitioner been advised as to the true nature and serious consequences of his guilty plea, he would not have pleaded guilty but would have elected to stand trial.'
 
 
 22
 At the time that Farnsworth's plea of guilty was accepted he was twenty-three years of age. He had a high school education. His claim of ignorance as to the charges against him is incredible for the charges against him were simple and easily understood. Farnsworth apparently knew that there was a difference between a felony count and a misdemeanor count and that both felony and misdemeanor counts had been lodged against him.
 
 
 23
 Nor on this record does there appear any basis for the charge that there was overreaching on the part of the Maryland officials. It hardly lends color to what he now charges that some part of the indictment was dismissed, perhaps in order to give him a lighter jail sentence. If Farnsworth had pleaded guilty to the misdemeanor count he could have received a maximum sentence of ten years on each count of the four indictments. Annotated Code of Maryland, 1924 Edition, Article 27, 139.[5] The one year sentences for each forgery count, to be served concurrently, were reasonable. There is no reason to believe that he would have received a lesser sentence even if he had pleaded to the four misdemeanor counts instead of the four felony counts as the maximum sentence for forgery was 10 years and the maximum sentence for obtaining money by false pretenses was 10 years.
 
 
 24
 Thus Farnsworth's petition shows only that a mature young man, with an adequate understanding of what he was doing, pleaded guilty to a charge in a proceeding in which he seems to have been fairly treated. That he was not assigned counsel to explain to him all the possible legal ramifications of his plea does not constitute fundamental unfairness so that the proceedings would be violative of the requirements of due process. What the petitioner is really complaining about is that someone did not advise him in Baltimore in 1929 that New York had a Multiple Offender Act and if he were later convicted of a felony in New York he would be subjected to additional penalties. Thus Farnsworth waited until 1947 to 'correct' the 1929 record because it was not until then that he became aware of the unforeseen consequences of the 1929 plea.
 
 
 25
 We deplore the fact that Farnsworth was not represented by counsel if that be the fact. But we cannot believe that this is sufficient to justify inquiry into what a state court did 29 years ago when a defendant was sentenced to a year in prison for fraudulently securing a total of $278.40 by cashing four forged checks.
 
 
 26
 Due process does not require that a state should advise of the possible legal effect of pleading to non-capital charges any more than it requires assignment of counsel in such cases where the net result of what happens and the manner of its happening do not offend generally accepted notions of fair play. Here, on the contrary, it would seem that the net result shows that Farnsworth was fairly treated. In such a case the federal courts are well advised not to interfere with the administration of criminal justice of a state. This is not to say that the state may not be required to meet a charge that a conviction is unconstitutional because of the difficulties involved, United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349. But where in a petition a prisoner asserts only vague and conclusory allegations, in what is palpably a desperate effort to evade a lawful sentence, we should not call for such effort from the state. Indeed what would be required here to refute Farnsworth's conclusory charge, which gives no names, details or descriptions, would be to produce every court and jail official and employee who had any contact with Farnsworth at any time during his incarceration until the time of his plea. So to dignify charges such as this would further encourage groundless allegations, already swollen to many hundreds each year. We should not permit the use of the federal court forum to harass the officials of both New York and Maryland in the business of administering criminal justice where a claim is so ancient, indefinite, implausible, and patently void of any possible merit. The state governments and the people they protect are also entitled to due process. Stein v. New York, 1953, 346 U.S. 156, 197, 73 S.Ct. 1077, 97 L.Ed. 1522.
 
 
 27
 We take this opportunity to express our appreciation to Nicholas John Stathis for the most able representation given the petitioner as assigned counsel.
 
 
 28
 MEDINA, Circuit Judge (concurring).
 
 
 29
 I am in agreement with that portion of Judge Lumbard's opinion which holds that petitioner had exhausted his state remedies.
 
 
 30
 On the merits of his claim, petitioner argues that he is imprisoned in violation of the due process clause of the Fourteenth Amendment because there was an essential unfairness in his 1929 conviction in a Baltimore court for forgery. The principal elements of the alleged unfairness were that counsel was not assigned to represent petitioner, and that some officials in the Baltimore jail 'advised petitioner his trial would be treated as a misdemeanor case.' But, as Judge Lumbard points out, it is settled law that the mere failure to assign counsel in a state court in a non-capital case is not of itself a deprivation of due process.
 
 
 31
 Was there any essential unfairness in the Baltimore proceedings, which, when considered together with the allegation that petitioner was not represented by counsel, would amount to a deprivation of due process? I think not. The allegations relative to statements by officials in the jail amount to no more than that petitioner allegedly was told he would be given a light sentence if he pleaded guilty, and, if so, he got precisely what he bargained for. Also, it is fantastic to suppose that the alleged statement that 'his trial would be treated as a misdemeanor case' can be viewed prospectively with reference to possible state multiple felony offender statutes that might affect petitioner in case he committed further crimes in the future. What the case comes down to is that the charge against petitioner was simple, readily understood by anyone, and there was no overreaching or unfairness on the face of the allegations.
 
 
 32
 In other words, it is my position that assuming arguendo that petitioner could prove the allegations contained in his petition he nevertheless would not have shown that he had been denied due process of law. In reaching this conclusion I consider it entirely irrelevant that, in his petition in the case at bar, petitioner failed to assert his innocence of the crime to which he pleaded guilty, that petitioner could have been sentenced up to ten years on each misdemeanor count had he been found guilty of the offenses charged therein, and that difficulties of proof might be involved were a hearing to be held. If the allegations in the petition made out a showing of lack of due process in connection with petitioner's conviction in Baltimore, a trial of the issues would be mandatory; but no such showing had been made in this case, in my opinion.
 
 
 33
 WATERMAN, Circuit Judge (dissenting).
 
 
 34
 Two issues, and two issues only, are raised by this appeal: (1) Did petitioner comply with the requirements of 28 U.S.C. 2254 by exhausting the state remedies available to him? (2) If he did exhaust the state remedies, is he entitled to a hearing before the U.S. District Court in order to present his proof of the facts he alleges in his petition? I concur with my colleagues in holding that the provisions of 28 U.S.C. 2254 did not preclude the district court from exercising jurisdiction in this cause. I must dissent from the result they reach, however, for their decision on the second issue appears to me to be in conflict with decisions of the Supreme Court and with prior holdings of this court.
 
 
 35
 Petitioner is presently incarcerated in the Auburn State Prison under a judgment of conviction rendered by a New York state court pursuant to the New York Multiple Offender Law. New York Penal Law, 1942. His sentencing thereunder as a fourth offender was based partly upon a prior conviction in Maryland; and it is the validity of this Maryland state conviction, upon which the correctness of the present New York sentence depends, United States ex rel. Smith v. Jackson, 2 Cir., 1956, 234 F.2d 742, that is questioned by the application for a writ of habeas corpus now before us. It is well established that when application is made for a writ of habeas corpus, the allegations contained in the petition are to be taken as true unless, after a hearing, the district court determines otherwise.[1] This principle has recently been re-emphasized by the Supreme Court's per curiam reversal of the denial of a hearing to a federal prisoner who alleged in his petition that his conviction upon a plea of guilty had been obtained when he was not represented by any counsel, when he had not intelligently and competently waived his right to be so represented, and when the plea was obtained by threat, promise and coercion without his having been informed of the charges against him.[2] So it is established that a petitioner is entitled to a hearing unless, as a matter of law, the petition fails to set forth circumstances indicating that he is imprisoned in violation of rights guaranteed by the federal constitution.[3] And, too, in order that a petitioner entitled to relief shall not be denied justice a petition for habeas corpus should not be scrutinized with technical nicety. See Holiday v. Johnston, 1941, 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L.Ed. 1392; United States ex rel. Marcial v. Fay, 2 Cir., 1957, 247 F.2d 662. It is enough if the allegations of the petition fairly call into question the validity of the judgment under which the petitioner is imprisoned. These principles, so firmly established that they are no longer open to serious question, ordinarily would require no discussion or restatement. They are reasserted here only because the error into which I believe my colleagues have fallen appears to have resulted from overlooking them.
 
 
 36
 Thus, merely by examination of Farnsworth's petition, the majority find that the allegations therein contained are 'implausible' and that 'His claim of ignorance as to the charges against him is incredible * * *'. That may well be, but a unanimous Supreme Court noted in Walker v. Johnston, 312 U.S. 275, 287, 61 S.Ct. 574, 579, 85 L.Ed. 830, that 'The Government's contention that his (petitioner's) allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence.' Hence it would seem clear that prior to a hearing we should not not draw inferences of fact from petitioner's allegations that are unfavorable to him. Yet the majority conclude that 'some part of the indictment was dismissed, perhaps in order to give him a lighter jail sentence.' I am required to interpret the majority opinion as subjecting Farnsworth to the 'trial by pleadings' that prior decisions have so uniformly denounced.
 
 
 37
 The allegations of the petition, which at this stage of the proceedings must be taken as true, recite that the petitioner, aged 23, without a completed high school education, was brought into court under four indictments, each indictment containing three counts-- twelve counts in all. Each indictment contained one count for forgery, another for uttering a forged instrument, and a third for obtaining money under false pretenses. Under Maryland law, the crimes charged in the first two counts were felonies,[4] and the one charged in the third count was a misdemeanor.[5] The petitioner was told by officials of the Baltimore City Jail that if he pleaded guilty he would be sentenced only for a misdemeanor, but that if he persisted in a plea of not guilty and was tried and convicted he would be sentenced to the penitentiary for a much longer term, and would also suffer the loss of various civil rights.5A When he was taken before the court the indictments were not read to him; nor did the trial court advise him of the charges against him or of the consequences of a plea of guilty. In proceedings which lasted approximately one minute, the court received petitioner's plea and sentenced him to the Baltimore City Jail for forgery without even inquiring whether there were any reasons why judgment should not be pronounced. And there is a further allegation that petitioner was not aware until 1947 that he had pleaded guilty to, and therefore had been found guilty of, a felony; and that as soon as he acquired this knowledge he promptly commenced proceedings to correct or invalidate the record of his conviction. If these allegations are true, it cannot be seriously doubted that the Maryland conviction was invalid. Consequently, the petitioner is entitled to a hearing so that he may have an opportunity to establish their truth.[6]
 
 
 38
 The majority, in holding that Farnsworth is not entitled to a hearing on the face of his petition, rely upon Quicksall v. Michigan for the proposition that a plea of guilty entered without benefit of counsel will not be invalidated unless there is a showing of unfairness attributable to lack of counsel. Quicksall is inapposite since there the defendant was aware of his right to be represented-- hence he could not have been prejudiced by the failure of the court to advise him of his right. In addition, the record before the Supreme Court indicated that the trial court was 'clearly satisfied that the plea of guilty is made freely, understandingly and voluntarily * * *'. 339 U.S. 660, 662, 70 S.Ct. 910, 911. While the safeguards attendant upon reception of a plea of guilty in the state courts may not be as stringent as those required in the federal system, see United States v. Lester, 2 Cir., 1957, 247 F.2d 496, the Supreme Court when it has declared that a state conviction was unassailable under the Fourteenth Amendment has relied upon evidence that the defendant had been advised of the nature of the charges against him and the consequences of his plea. See, e.g., Bute v. Illinois, 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Foster v. Illinois, 1947, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955. The importance of proper performance of the trial court's role is amply demonstrated by the present case. Not only does petitioner declare that he was unaware of the charges which had been placed against him, but he was told by his jailers, persons whom a layman might reasonably suppose to be in a position of authority, that if he pleaded guilty he would be sentenced only for a misdemeanor. This aspect of the case is strikingly similar to the circumstances presented in Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 and Palmer v. Ashe, 1951, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154, in each of which the Supreme Court held that a hearing was required to determine the truth of allegations that the prosecutor had misrepresented the nature of the offense charged by the indictment. A defendant unaware of the nature of the charges to which he is pleading certainly has not had the notice that is a prime requisite of due process. Proper safeguard of Farnsworth's rights might have been achieved by the Maryland trial court; but, as the Supreme Court stated in a case where a state trial court denied a petitioner a hearing upon habeas corpus, Uveges v. Pennsylvania, 1948, 335 U.S. 437, 442, 69 S.Ct. 184, 186, 'The record shows no attempt on the part of the court to make him understand the consequences of his plea. Whatever our decision might have been if the trial court had informed him of his rights and conscientiously had undertaken to perform the functions ordinarily entrusted to counsel, we conclude that the opportunity to have counsel in this case was a necessary element of a fair hearing.'[7]
 
 
 39
 As I read the majority opinions, however, even if Farnsworth was induced to plead guilty by the misrepresentation that the plea was for a misdemeanor rather than a felony, he was not prejudiced; and, therefore, he is not entitled to relief as a matter of law even if his allegations are true. The argument is based upon the fact that had Farnsworth pleaded guilty to the misdemeanor counts he could have received sentences of ten years on each. It ignores the fact that the severity of the penalty imposed for commission of a crime is not dependent solely upon the sentence which may be imposed. Under Maryland law a convicted felon suffers the loss of certain civil rights; and, indeed, subjects himself to additional criminal liability if he attempts to assert those rights. See Annotated Code of Maryland (1924) Article 33, 109. In addition, the argument has a rather hollow sound in view of the fact that petitioner as a fourth felony offender continues to suffer from the consequences of the alleged misrepresentation.
 
 
 40
 Furthermore, I would point out that in Judge Lumbard's opinion it is clear that the petitioner is refused a hearing because of factors which prior decisions have uniformly declared to be irrelevant. Thus, in his opinion, he refers to the fact that Farnsworth nowhere alleges innocence of the forgery for which he was convicted. Indeed, upon analysis of that opinion, it appears that the basis for the holding that Farnsworth was not prejudiced by not having counsel is the conclusion that he must have been guilty of the forgery. The irrelevancy of that consideration is amply demonstrated by our recent decision in United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349, in which the petitioner was held entitled to relief even though he admitted that he might be guilty of the offense for which he had been convicted. See United States v. Morgan, 2 Cir., 1955, 222 F.2d 673.
 
 
 41
 The Savini decision is also relevant to the Judge Lumbard assertion that a hearing should not be granted because of the difficulties of proof inherent in considering a collateral attack upon a 1929 conviction. There, as here, the Attorney General of New York urged upon us the great difficulty in defending convictions in another state against a collateral attack. Judge Hincks pointed out, 250 F.2d at pages 354-355, that 'the burden * * * is an inescapable incident to legislation such as the New York Multiple Offender Law. To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions. Constitutional guarantees should not be shorn of their vitality merely to facilitate the administration of a penal policy whereby the sentence on one conviction depends in part on a prior conviction.' See also Palmer v. Ashe, supra, in which the Supreme Court ordered a hearing to determine the validity of a conviction rendered eighteen years prior to the petition for habeas corpus.
 
 
 42
 In conclusion, I submit in all deference that my colleagues err in denying petitioner a hearing so that he may have the opportunity to establish the truth of the allegations contained in his petition. If these allegations can be substantiated the Maryland conviction lacked the fundamental fairness which is required by the Fourteenth Amendment. Consequently, the petitioner is entitled to his day in court, Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.
 
 
 43
 I would reverse and remand to the District Court.
 
 
 
 [1]
 Not included was a 1931 conviction for desertion from the United States Army
 
 
 [2]
 On appeal to the Appellate Division, Second Department, the order was affirmed without opinion on October 1, 1956, People v. Farnsworth, 2 A.D.2d 852, 156 N.Y.S.2d 137. Leave to appeal to the New York Court of Appeals was denied by Judge Desmond of that court on November 7, 1956
 
 
 [3]
 We are mindful of Zavada v. United States, 1958, 355 U.S. 392, 78 S.Ct. 383, 2 L.Ed.2d 356, wherein the Supreme Court remanded for a hearing on Zavada's petition that he had pleaded guilty in federal court to a bank robbery charge carrying a minimum sentence of 25 years without being advised of his right to counsel. It is one thing to grant a hearing to a federal prisoner who alleges he was not advised of his right to counsel in violation of the rights guaranteed to him by the Sixth Amendment to the Constitution; it is quite another thing for a federal court to inquire into what a state court has done where the result seems wholly fair and reasonable and not inconsistent with the traditional concepts of justice envisaged by the due process clause of the Fourteenth Amendment
 
 
 [4]
 The brief submitted by assigned counsel for the petitioner shows that Farns-worth did have one previous arrest, on June 22, 1929 in New York City. The charge upon which the arrest was based was dismissed on July 1, 1929 (Appellant's Brief, p. 37)
 
 
 [5]
 'Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor, and being convicted thereof shall be liable, at the discretion of the court, to be punished by fine and imprisonment, or by confinement in the penitentiary for not less than two years nor more than ten years, as the court shall award; * * *'
 
 
 [1]
 House v. Mayo, 1945, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859
 
 
 [2]
 Zavada v. United States, 1958, 355 U.S. 392, 78 S.Ct. 383, 2 L.Ed.2d 356. Zavada had not petitioned for habeas corpus but instead moved under 28 U.S.C. 2255 to vacate the sentence against him. The procedure under 2255 is not, however, materially different from that in 28 U.S.C. 2243 which governs procedure upon application for a writ of habeas corpus
 
 
 [3]
 Com. of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 76 S.Ct. 223; Palmer v. Ashe, 1951, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574; United States ex rel. Marcial v. Fay, 2 Cir., 1957, 247 F.2d 662
 
 
 [4]
 Annotated Code of Maryland (1924) Article 27, 44
 
 
 [5]
 Annotated Code of Maryland (1924) Article 27, 139
 5A Farnsworth alleges in paragraph 21 of his petition that
 'He was advised if, when he appeared before the court, he pleaded guilty that he would be sentenced to the Baltimore City Jail for misdemeanor and warned if he pleaded not guilty and was convicted that he would probably be sentenced to the penitentiary for a much longer term and lose his right to vote and other undefined privileges.'
 
 
 [6]
 See cases cited in footnotes 1 and 3
 
 
 [7]
 Uveges, like Smith v. O'Grady and Palmer v. Ashe, involved claims of overreaching by state authorities. Cf. Townsend v. Burke, 1948, 334 U.S. 736, 740, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, in which the Supreme Court held an uncounseled defendant entitled to relief because he was either 'overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record.'