Hamilton Ward, J.
This is an application for an order vacating a sentence of this court pronounced upon the defendant in 1954 as a'third felony offender and directing a resentence. The petition alleges that one of the predicate judgments of conviction had in the Province of Ontario, Canada, in 1932, is invalid because the petitioner was not represented by counsel in that proceeding and did not intelligently waive his right to counsel.
Prior to the amendment to section 1943 of the Penal Lavr by chapter 446 of the Laws of 1964, effective April 10, 1964, it was plain that predicate convictions from the courts of other States were not subject to collateral attack here either by way of habeas corpus or coram nobis (People v. McCullough, 300 N. Y. 107 [1949]; People v. Wilson, 13 N Y 2d 277 [1963]) and it followed necessarily that the same rule applied to such judgments rendered in the courts of foreign countries (see United States ex. rel. Dennis v. Murphy, 265 P. 2d 57 [C. A. 2d, 1959]).
The amendment referred to above so far as material here forbids the use of any ‘ ‘ previous conviction in this or any other state * * * as a predicate for multiple offender treatment * * * if such conviction was obtained in violation of the rights of the person accused under the applicable provisions of the constitution of the United States.” It is further provided that, “An objection that a previous conviction was unconstitutionally obtained may be raised at this time and the court shall so inform the person accused. Such an objection shall be entered in the record and shall be determined by the court, without empanelling a jury.” As a result of this amendment to section 1943 it has been held that there now exists a remedy, by way of a motion for resentence, where a predicate judgment of conviction shown to have been unconstitutionally obtained was utilized to create multiple offender status (People v. Cornish, 21 A D 2d 280 [1964]). Although that case involved earlier convictions had in the State of Pennsylvania and contains dictum to the effect that the same remedy would be available in the sentencing court to one seeking to attack, on constitutional grounds, previous judgments of conviction entered in the courts of this State (with which conclusion I have respectfully differed — see People v. Dold, 45 *1043 Misc 2d 52 [1965]), it does establish the existence of a remedy for those sentenced as multiple offenders prior to the effective date of the amendment. The question here then is whether that same remedy is available to attack a predicate judgment of conviction obtained in the courts of a foreign country as opposed to one from the courts of a sister State.
The language of sections 1941 and 1942 of the Penal Law both permit, or rather mandate, the use of convictions ‘ ‘ under the laws of any other state, government or country ” (§ 1941) in determining multiple offender status and those sections have been so applied to judgments of conviction from Canadian courts (see People ex rel. Latraverse v. Jackson, 284 App. Div. 822 [1954]; People ex rel. Stevens v. Jackson, 283 App. Div. 3 [1953]). The effect of the previous judgment of conviction, whether it be domestic or foreign, is the same in mandating increased punishment for subsequent crimes and the constitutional infirmities in the New York practice which permitted the use of previous convictions to increase punishment without affording any review of the circumstances under which such judgments were obtained were as inherent in one case as the other. This is illustrated by the habeas corpus proceedings had in the United States District Court in which Canadian judgments of conviction, used as predicates for increased punishment in New York, have been tested by the application of due process requirements (see United States ex rel. Dennis v. Murphy, supra; United States ex rel. Dennis v. Murphy, 184 F. Supp. 384 [U. S. Dist. Ct., N. D. N. Y., 1959]; United States ex rel. Foreman v. Fay, 184 F. Supp. 535 [U. S. Dist. Ct., S. D. N. Y., 1960]) just as have judgments of conviction had in sister States (see United States ex rel. Turpin v. Snyder, 183 F. 2d 742 [C. A. 2d, 1950]; United States ex rel. Smith v. Jackson, 234 F. 2d 742 [C. A. 2d, 1956]; United States ex rel. Savini v. Jackson, 250 F. 2d 349 [C. A. 2d, 1957]; United States ex rel. Farnsworth v. Murphy, 254 F. 2d 438 [C. A. 2d, 1958], revd. on other grounds 358 U. S. 48; United States ex rel. Moore v. Martin, 273 F. 2d 344 [C. A. 2d, 1959], cert. den. 363 U. S. 821 [1960]; United States ex rel. La Near v. LaVallee, 306 F. 2d 417 [C. A. 2d, 1962]).
From the foregoing it can be concluded that all previous judgments of conviction for felonies, whether domestic or foreign, must, according to New York law, be utilized in determining multiple offender status but that the use of any such judgments is prohibited by substantive due process requirements if obtained in violation of the defendant’s constitutional rights and further that procedural due process, as the Federal cases hold, demands a prior determination of such constitutional objections. As matters now stand it is clear that such objec *1044 tions to predicate judgments of conviction had in sister States may be tried ont at the time of sentence (Penal Law, § 1943 as amd.) or later by motions for resentence (People v. Cornish, 21 A D 2d 280, supra). Were the question an open one I would be inclined to hold that such a hearing is required by due process, statute or no (see Oyler v. Boles, 368 U. S. 448, 454 [1962]), which holding would dispose of the situation presented here where the judgment sought to be challenged was had in a foreign country. Such a conclusion, however, is foreclosed at present by the decision in People v. Wilson (13 N Y 2d 277, 280, supra) which, while it might be read as simply declining to extend a remedy by way of the writ of coram nobis, is premised on the proposition that “ New York State is under no duty of providing a forum for such an attack on a foreign judgment ”. Beyond this, the court held in Wilson that extension of relief by coram nobis was not justified in view of the expense and difficulties such an extension would entail (p. 281). A remedy then, if one is to be found, must, in view of Wilson, be sought in the language or necessary implications of chapter 446 of the Laws of 1964.
The relatively scant legislative history of that statute indicates no conscious effort to distinguish between convictions in the courts of sister States and those of foreign countries. (See memorandum of State Department of Law, N. Y. State Legis. Annual, 1964, p. 57, and the Governor’s memorandum approving the bill, ibid., p. 514.) These sources refer to the need to provide a remedy where the predicate judgment of conviction is from “ another jurisdiction ” without distinguishing between those of domestic origin and those from foreign countries. Indeed, there is no apparent basis for any such distinction aside from the greater difficulty which, presumably would arise in hearings where judgments of foreign countries were called into question. Even so, as the Court of Appeals (2d Cir.) observed in United States ex rel. Savini v. Jackson (250 F. 2d 349, 354-355, supra)-. “ the burden, we suggest, is an inescapable incident to legislation such as the New York Multiple Offender Law. To the extent that any State makes its penal sanctions depend in part on the fact of prior convictions elsewhere, necessarily it must assume the burden of meeting attacks on the constitutionality of such prior convictions. Constitutional guarantees should not be shorn of their vitality merely to facilitate the administration of a penal policy whereby the sentence on one conviction depends in part on a prior conviction.”
The adoption by our Legislature of chapter 446 is a rather clear indication that the policy of this State is in accord with *1045 the foregoing quotation and that the necessary procedural implements are to he made available to test the validity of judgments of conviction from other jurisdictions relied upon here to measure the severity of sentences imposed for subsequent crimes. The sole hindrance to a holding that the remedy provided by the statute, or further found in the implications of its existence, is available where the judgment of conviction is from a foreign country is the phrase used in the statute itself, “ in this or any other state ” referring to judgments of convictions which may not be used to establish multiple offender status. This language, taken together with the fact that the Legislature has indicated in other statutes its awareness of the distinction between sovereigns (see Penal Law, §§ 1941-1942, which refer to convictions under the laws “ of any other state, government or country ”) would support an interpretation restricting the relief to predicate convictions from sister States only. Additional support for such an interpretation may be found in the statutory definition of the word “ State ” in section 47 of the General Construction Law which provides: “ The term state, when used generally to include every state of the United States, includes also every territory of the United States and the District of Columbia.”
There are, of course, instances where the word 11 State ” has been used to denote ‘ ‘ the power or authority represented by a body of people politically organized under one government, especially an independent government, within a territory or territories having definite boundaries,” (Webster’s New Twentieth Century Dictionary [2d ed.], p. 1776; Articles of Confederation, art. VI; U. S. Const., art. I, § 9, ‘ foreign State”; ibid., art. III, § 2, “ foreign States ”; ibid., Arndt. XI, “ Foreign State ”).
Weighing against this restricted interpretation of the phrase 11 this or any other .state ’ ’ is the fact that such a reading would necessarily mean that this State had no compunctions against relying upon predicate convictions no matter how obtained unless the judgments were those of sister States. This would, of course, be contrary to the Federal habeas corpus cases cited earlier which have treated such convictions, whether domestic or foreign, as alike. It would also continue, in part, the situation so far as foreign convictions are concerned that existed prior to the passage of the amending act which practice relegated State multiple offenders to Federal courts for relief from the use of any allegedly invalid predicate convictions relied upon to create multiple offender status here. There would be created an invidious discrimination between those sentenced *1046 to increased punishment because of prior convictions in sister States and those so punished on the basis of convictions in foreign countries. That seems contrary to the intent of the statute as it was viewed by the State officers who proposed it and by the Governor who approved its enactment. But more importantly it seems to me that a restrictive interpretation endangers the act by causing it to deny to the defendant and those similarly situate, that equal protection of our laws guaranteed by the Fourteenth Amendment to the United States Constitution.
This court must, of course, accept the holding of the Court of Appeals in Wilson that this State is not required to provide a for-um in which convictions from other jurisdictions may be questioned upon constitutional grounds so long as relief may be had somewhere else, i.e., in Federal habeas corpus proceedings. The Legislature had determined, however, in adopting chapter 446 that such a remedy should be provided so the question here is analogous to that which has arisen where a State, though not required to do so (see McKane v. Durston, 153 U. S. 684 [1894]), has provided appellate review in criminal cases but has, whether intentionally or not, foreclosed some defendants from the remedy provided. The answer to such discrimination was well stated by the late Mr. Justice Frankfurter in Griffin v. Illinois (351 U. S. 12, 21-22): “ But neither the fact that a State may deny the right of appeal altogether nor the right of a State to make an appropriate classification, based on differences in crimes and their punishment, nor the right of a State to lay down conditions it, deems appropriate for criminal appeals, sanctions differentiations by a State that have no relation to a rational policy of criminal appeal or authorizes the imposition of conditions that offend the deepest presuppositions of our .society.”
These authorities establish, I believe, the danger that the ■statute under consideration interpreted so as to bar the door of our courts to the defendant, would offend the Constitution of the United States. Of course, the equal protection clause does permit appropriate classification based upon relevant distinctions between particular categories of cases but that has not been attempted here nor does there appear to be any rational basis for a denial of the remedy simply because of the locus of the predicate judgment used to enlarge the punishment visited upon subsequent offenders.
It • is an old teaching that ‘ ‘ statutes must be construed to avoid not only the conclusion that they are unconstitutional, but also to avoid any grave doubts on that score.” (McKinney’s *1047 Cons. Laws of N. Y., Book I, Statutes, § 150, p. 237, n. 97, and cases cited therein.) With this rule of construction in mind, and also because I believe that a reading of the amending act, together with the statutes with which it is in pari materia (Penal Law, §§ 1941-1942) and the legislative history of the act so establish the intent of the statute, I hold that the remedy of resentence found to exist by the decision of the Appellate Division of the Supreme Court, First Department, in People v. Cornish (supra), with respect to prior sister State convictions, exists also where, as here, the predicate judgment is alleged to have been obtained in the courts of a foreign country “ in violation of the rights of the person accused under the applicable provisions of the constitution of the United States.” (Penal Law, § 1943, as amd.)
The answering affidavit and the exhibits attached thereto do no more than create an issue of fact as to whether this defendant intelligently and deliberately waived his right to counsel upon arraignment and trial by the Police Magistrate of the County of Lincoln, Province of Ontario, Canada.
Accordingly, the defendant should be produced before this court for a hearing upon the allegations of the petition made in support of his motion for resentence.
As pure dictum, but based upon the experience of nearly a quarter of a century of service as a Trial Judge in courts of this State having jurisdiction over felony charges, the present complexities of the New York State Multiple Offender Laws and in view of the difficulties presented in the enforcement thereof, I am of the opinion that the entire structure of these laws should be repealed without delay. There have been few statutes which have caused, directly or indirectly, the amount of posttrial litigation in criminal matters as has the so-called Baumes Law of 35 years ago and all this without any convincing evidence that the often unduly severe sentences mandated thereby accomplished their declared purpose of deference. The mandatory nature of the present sentencing statute with respect to previous felony offenders is, in my opinion, out of step with modern sentencing concepts which in themselves reflect the rapid growth in our knowledge in the behavioral sciences and penology. Previous convictions are naturally relevant in determining the appropriate sentence to be meted out upon a subsequent conviction but since no statute can possibly establish a rule of thumb equitable in all cases, power should be vested in a sentencing tribunal to select the appropriate sentence after weighing all the circumstances including not merely the defendant’s needs but also those of the society to which, in most cases, *1048 he will, sooner or later, return. The proposals made by the New York State Commission on Bevision of the Penal Law and Criminal Code with respect to the sentencing of recidivists are a real step in the direction which, I believe, should be taken. (See Proposed Penal Law, art. 30, § 30.10.) The relatively broader discretionary powers which that proposal would confer in the punishment of third or subsequent felony offenders would help to restore a flexibility in the sentencing of such defendants that has been missing since the Baumes Law, and its progeny, were enacted in a well-intentioned effort to achieve deterence by means of legislative sentencing. Even so, the proposal with respect to what the commission’s bill refers to as a “persistent felony offender” relying as it does on previous convictions “ in any other jurisdiction ” (§ 30.10) may well leave open the question whether such judgments from other jurisdictions are subject to attack here if they are alleged to have been obtained in violation of the defendant’s constitutional protections. That, of course, may be the necessary price in any procedure where increased punishment is permitted or mandated because the defendant has been previously convicted but, insofar as the commission’s proposal will permit the use of prior convictions for misdemeanors in determining “ persistent felony offender ” status, it is questionable whether the price is not too high. This is not to say that no standards should be established' with respect to particularly serious crimes; they should, in order to indicate to the courts and to potential offenders as the commission observed “ society’s view of the gravity of particular criminal conduct.” Within the limits of these standards, however, the responsibility of selecting an appropriate sentence should lie with the sentencing power. The need for study and development of more adequate sentencing techniques utilizing modern scientific concepts has been recognized by the Legislature in its mandate to the Administrative Board of the Judicial Conference to establish “institutes on sentencing for the purpose of promoting the equitable administration of the criminal laws of this state, with particular reference to disparity of sentences imposed thereunder.” (Judiciary Law, § 234-a, subd. 1.) That section further provides that: “The agenda of such institutes may include but shall not be limited to: (1) the development of standards for the content and utilization of presentence reports; (2) the establishment of factors to be used in selecting cases for special study and observation in prescribed diagnostic clinics; (3) the determination of the importance of psychiatric, emotional, sociological and physiological factors involved in crime and *1049 their bearing upon sentences; (4) the discussion of special sentencing problems in unusual cases such as violation of public trust, crimes by minors or involving abnormal sex behavior, addiction to drugs or alcohol, and mental or physical handicaps; (5) the formulation of sentencing principles and criteria which will assist in promoting the equitable administration of the criminal laws of this state.” (Ibid., subd. 2.)
It may well be that a relative disparity in sentences imposed for the same or similar offenses will remain or even increase as a result of future studies but a more uniform weighting of the factors to be considered would make it possible to relate the differences to relevant sentencing criteria rather than particular judicial idiosyncrasies.
Until the administration of criminal justices becomes even more enlightened, we must wait the day when all sentences or felonies will be determined and imposed by a duly constituted sentencing board composed of professionally trained representatives from the fields of psychiatry, psychology, sociology and penology who would be charged to see to it, not only that the punishment fit the crime, but that the punishment fit the criminal.